BOIS BLANC ISLAND TOWNSHIP v NATURAL RESOURCES
COMMISSION

CITY OF OMER v NATURAL RESOURCES COMMISSION

VILLAGE OF L'ANSE v NATURAL RESOURCES COMMISSION

Docket Nos. 81123, 81124, 81125. Submitted December 9, 1985, at
Lansing. Decided March 2, 1987.

Bois Blanc Island Township and other townships, cities and
villages which individually had been operating sanitary land-
fills on state-owned land under permits issued by the Depart-
ment of Natural Resources or its predecessor, the Department
of Conservation, filed separate actions in the Ingham Circuit
Court against the Natural Resources Commission and the
Department of Natural Resources after the DNR served them
notice to quit the premises upon which they were operating
their landfills. Plaintiffs contended that the DNR must provide
them with an administrative hearing prior to terminating their
sanitary landfill permits. The actions were consolidated and the
trial court, James R. Giddings, J., granted summary judgment
in favor of plaintiffs and remanded the consolidated cases to
the DNR for a contested-case hearing as provided by the Admin-
istrative Procedures Act. Defendants appealed.

The Court of Appeals held:

1. Under an administrative rule promulgated by the Natural
Resources Commission, it is unlawful for anyone to use state-
owned land, other than state parks or recreation areas, as a
place to dispose of refuse, rubbish, trash or garbage without
proper written permission. The permits issued to the various
plaintiffs allowing them to conduct their operations are in
effect licenses within the meaning of the term "license" as
contemplated in the APA, which defines "license" to include the
whole or part of an agency permit, certificate, approval, regis-
tration, charter or similar form of permission required by law.

2. The DNR had allowed plaintiffs to continue their operations

REFERENCES

Am Jur 2d, Administrative Law § 363.

"Willfulness" and "public health, interest, or safety" exceptions to
notice and opportunity for compliance provisions of Administra-
tive Procedure Act (5 USCS § 558(c)) dealing with withdrawal,
suspension, revocation, or annulment of license. 46 ALR Fed 560.

without requiring plaintiffs to reapply for new permits once the permits had apparently expired and therefore has created an implied agreement that the permits were to be automatically renewed upon their expiration. Alternatively, an estoppel situation was created whereby the DNR is estopped from claiming that the permits had expired. Hence, plaintiffs' licenses were in effect at the time the DNR sought to terminate plaintiffs' use of the state-owned lands.

3. The DNR's attempt to halt plaintiffs' operations constitutes revocation, withdrawal or cancellation of licenses which have been in effect for several years, which under the contested-case provisions of the APA must be preceded by notice and an opportunity for a hearing.

Affirmed.

ENVIRONMENT — LANDFILL OPERATIONS ON STATE-OWNED PROPERTY — LICENSES — REVOCATION — ADMINISTRATIVE PROCEDURES ACT.

A permit issued by the Department of Natural Resources allowing an individual to operate a sanitary landfill on state-owned land is a license as defined by the Administrative Procedures Act; such permit may not be revoked, withdrawn or cancelled by the Department of Natural Resources until the individual is provided with notice and an opportunity for a hearing pursuant to the contested-case provisions of the Administrative Procedures Act (MCL 24.292; MSA 3.560[192], 1979 AC,R 299.331[1][d]).

*Timothy G. Holland,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas J. Emery* and *Sheldon A. Silver,* Assistant Attorneys General, for defendants.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and HOOD, JJ.

PER CURIAM. The Department of Natural Resources and the Natural Resources Commission appeal as of right from an order entered in the circuit court remanding these consolidated cases to the DNR for a contested-case hearing as provided in the Administrative Procedures Act, MCL 24.201 *et*

*seq.;* MSA 3.560(101) *et seq.* Plaintiffs are cities, villages and townships which individually have been operating sanitary landfills on undedicated, state-owned lands for several years. On appeal, the question facing this Court is whether the DNR may summarily, without notice, reason or a hearing, terminate plaintiffs' interests in the operation of the sanitary landfill sites on their present locations. We find that it may not so terminate without a hearing and, therefore, affirm the circuit court order remanding the cases to the DNR for such hearings.

The DNR and its predecessor, the Department of Conservation, have, since at least 1956, issued permits, variously called "use permits," "dump permits" and "sanitary landfill permits" (hereinafter referred to as sanitary landfill permits) to plaintiffs to operate sanitary landfills on state-owned lands. On the reverse side of these permits are twelve conditions with which plaintiffs were required to comply in order to continue operation of the sanitary landfills. The first landfill began operating in 1956, and the remainder of the plaintiffs began operation of landfills between 1959 and 1976. By their own terms, the sanitary landfill permits expired on December 31 of the year in which they were issued. All the plaintiffs' permits have since expired, most on December 31, 1976. Two others expired on December 31, 1982. Plaintiffs have not applied for a renewal of these permits and the DNR had, until recently, allowed plaintiffs to continue operation of the landfills without permits. Although several of the plaintiffs were licensed under the predecessor statute to the Solid Waste Management Act, none are licensed under the present act, MCL 299.401 *et seq.;* MSA 13.29(1) *et seq.* The sanitary landfill permits at issue in this case are distinct from the licensing

requirements under the Solid Waste Management Act. The sanitary landfill permits are in the nature of a land-use permit, permitting the plaintiffs to use state land for a specific purpose, in these cases, as sanitary landfill sites.

On August 15, 1983, the DNR, purportedly acting as proprietor or landlord, served notice on a representative of each of the plaintiffs to quit the premises upon which they were operating their landfills. Plaintiffs subsequently filed suit in circuit court, claiming that the DNR must provide them with an administrative hearing prior to terminating their sanitary landfill permits. Cross motions for summary judgment were filed. The trial court granted plaintiffs' motions on the basis that plaintiffs had licenses within the meaning of the APA and were entitled to a hearing on whether there was a proper basis for terminating plaintiffs' interests in the sanitary landfill sites.

As noted, each of the plaintiffs had originally been issued permits to operate sanitary landfills on state-owned land. We find that these permits were equivalent to licenses within the meaning of the APA.

A "license" as defined under the APA "includes the whole or part of an agency permit, certificate, approval, registration, charter or similar form of permission required by law . . . ." MCL 24.205(1); MSA 3.560(105)(1). This broad definition under the APA evidences a legislative intent to include practically any form of permission required by law. Under MCL 299.2; MSA 13.2, the DNR may promulgate and enforce reasonable rules concerning the use and occupancy of land under its control. The Legislature has also provided that the DNR may make rules for the protection of land under its control against wrongful use. MCL 299.3a; MSA 13.4. Pursuant to these grants of authority, the

DNR has promulgated an administrative rule which provides that it is unlawful for a person on state land other than state parks or recreation areas to use such land as a place to dispose of refuse, rubbish, trash or garbage without proper written permission. 1979 AC, R 299.331(1)(d). Since plaintiffs are required by law to have written permission from the DNR to operate their sanitary landfills on state land, the permits issued for such operations are, in effect, "licenses" within the meaning of the APA.

The DNR's argument that these permits are not "licenses" under the APA, but rather are licenses granted by an owner of land authorizing a particular use of the land (i.e., a "license" under common law), does not support its contention that the APA is inapplicable. The APA definition of "license" includes any "form of permission required by law." Since use of the state land as a sanitary landfill requires permission of the DNR, the sanitary landfill permits are "licenses" within the meaning of the APA.

Although we have characterized the sanitary landfill permits issued herein as "licenses" under the APA, it is not clear that a licensing arrangement is presently in effect. According to the terms of the sanitary landfill permits, they expired on December 31 of the year in which they were issued. Most of the plaintiffs' permits expired on December 31, 1976, while two expired on December 31, 1982. Plaintiffs have not applied for renewal of these permits. Thus, the DNR argues that even if the permits are "licenses" under the APA, no hearing is necessary since no "license" has been applied for, suspended, revoked or otherwise negatively acted upon by the DNR. However, following expiration of plaintiffs' permits, the DNR has allowed the plaintiffs to continue operation of

their sanitary landfills without reapplying for new permits. We find that the DNR's inaction on the permits for nine years created an implied agreement that the permits were to be automatically renewed upon their expiration or, at least, an estoppel situation was created whereby the DNR is estopped from claiming that the permits had expired. Hence, we conclude that a license was in effect at the time the DNR sought to terminate plaintiffs' use of state land for sanitary landfill sites.

Turning to whether the contested-case provisions of the APA apply in the present case, this Court has previously held that the provisions of the APA governing contested cases apply in licensing situations only when the licensing is required to be preceded by notice and an opportunity for hearing. *Kelly Downs, Inc v Racing Comm,* 60 Mich App 539, 547; 231 NW2d 443 (1975). See also *TDN Enterprises, Inc v Liquor Control Comm,* 90 Mich App 437, 439; 280 NW2d 622 (1979). The statutes upon which the DNR relies to issue the sanitary landfill permits, MCL 299.2; MSA 13.2 and MCL 299.3a; MSA 13.4, do not provide that the issuance of the permits be preceded by notice and an opportunity for a hearing. However, unlike *Kelly Downs* and *TDN Enterprises,* each of which involved an agency's original decision whether to issue a license, the instant case involves a "license" which has been in effect for several years. Further, MCL 24.292; MSA 3.560(192) provides:

> Before the commencement of proceedings for suspension, revocation, annulment, withdrawal, recall, cancellation or amendment of a license, an agency shall give notice, personally or by mail, to the licensee of facts or conduct which warrant the intended action. The licensee shall be given an opportunity to show compliance with all lawful

requirements for retention of the license. If the agency finds that the public health, safety or welfare requires emergency action and incorporates this finding in its order, summary suspension of a license may be ordered effective on the date specified in the order or on service of a certified copy of the order on the license, whichever is later, and effective during the proceeding. The proceedings shall be promptly commenced and determined.

Since we find that the DNR's attempt to evict the plaintiffs from state land is a revocation, withdrawal or cancellation of the sanitary landfill permits ("licenses" under the APA) previously issued, we conclude that this section's requirements of notice and an opportunity to show compliance applies to the present case. The APA provides that, where "licensing" (defined under the APA as an agency activity involving the grant, denial, renewal, suspension, revocation, annulment, withdrawal, recall, cancellation or amendment of a license, MCL 24.205[2]; MSA 3.560[105][2]) is required to be preceded by notice and an opportunity for a hearing, the provisions of the APA governing a "contested case" apply. MCL 24.291; MSA 3.560(191). Although the requirements of MCL 24.292; MSA 3.560(192) for notice and an opportunity to show compliance have been interpreted to provide for only an informal proceeding, *Marrs v Bd of Medicine*, 129 Mich App 559, 562-563; 341 NW2d 543 (1983), modified 422 Mich 688; 375 NW2d 321 (1985), a hearing is nevertheless required. Therefore, we conclude that the contested-case provisions of the APA apply in the present case, entitling plaintiffs to a hearing and notice as provided under MCL 24.271; MSA 3.560(171).

In view of our disposition of this issue, we decline to review the issue raised on appeal by

appellees that the plaintiffs' interest in operating the sanitary landfill sites is a property interest cognizable under the due process clause of the United States and Michigan Constitutions.

Affirmed.