692 N.W.2d 68 (2004)
Robert MAXWELL and Lynn Maxwell, Petitioners-Appellants,
v.
DEPARTMENT OF ENVIRONMENTAL QUALITY, Respondent-Appellee.
Docket No. 248241.
Court of Appeals of Michigan.
Submitted October 6, 2004, at Detroit.
Decided October 21, 2004.
Approved for publication December 9, 2004, at 9:00 a.m.
Released for Publication February 2, 2005.
*71 Haywood Harrison, P.C. (by David J. Haywood), Lansing, for the petitioners.
Michael A. Cox, Attorney General, Thomas L. Casey, Solicitor General, and Barbara A. Schmidt, Assistant Attorney General, for the respondent.
Before: MARK J. CAVANAGH, P.J., and FITZGERALD and METER, JJ.
*69 PER CURIAM.
Petitioners appeal by leave granted the circuit court order affirming the hearing referee's grant of summary disposition for respondent Department of Environmental Quality (DEQ) pursuant to MCR 2.116(C)(4), lack of subject-matter jurisdiction. We affirm.
The facts of this case are largely undisputed. In late June 2001, petitioners had substantially completed construction of a garage addition that was built on existing pilings.[1] On July 5, 2001, the DEQ sent petitioners a notice of violation informing them that the garage addition was built in violation of the permit requirements of part 303 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.30301 to 324.30323. Petitioners responded that they were unaware that a permit was required. On October 26, 2001, the DEQ sent petitioners an order to restore the construction to its original state. The order sought petitioners' voluntary compliance in removing the garage, girders, and pilings constructed in violation of part 303 of the NREPA. The order also stated that the DEQ would not process an after-the-fact (ATF) permit application if submitted by petitioners. See MCL 324.30306(5).
Petitioners subsequently submitted an ATF permit application to the DEQ. The DEQ returned the ATF permit application, informing petitioners that it could not process it because an order to restore had already been issued. Petitioners then sought a contested case hearing with the DEQ Office of Administrative Hearings (OAH). The hearing referee granted the DEQ's motion for summary disposition, and petitioners sought review in the circuit court. The court affirmed, citing the language of MCL 324.30306(5) and concluding that the OAH lacked jurisdiction to review the merits of the ATF permit application.
Petitioners first argue that they were denied due process by the circuit court affirming the hearing referee's dismissal of their petition for a contested case hearing. This Court reviews a circuit court's grant of summary disposition de novo. McManamon v. Redford Charter Twp., 256 Mich.App. 603, 610, 671 N.W.2d 56 (2003). Additionally, "[w]hether subject-matter jurisdiction exists is a question *72 of law." Jones v. Slick, 242 Mich.App. 715, 718, 619 N.W.2d 733 (2000).
MCL 324.30306(5) provides:
If work has been done in violation of a permit requirement under this part and restoration is not ordered by the department, the department may accept an application for a permit if the application is accompanied by a fee equal to twice the permit fee required under this section.
When the powers of an administrative agency are specifically conferred, they cannot be extended by inference. Lake Isabella Dev., Inc. v. Village of Lake Isabella, 259 Mich.App. 393, 401, 675 N.W.2d 40 (2003). By its plain language, MCL 324.30306(5) gives the DEQ discretion to process an ATF permit application, but specifically limits the exercise of that discretion to the period before an order to restore has been issued. Once the order to restore was issued, the DEQ no longer possessed the authority to process petitioners' ATF permit application.
Nevertheless, petitioners argue that because they have been aggrieved by the DEQ's refusal to process their ATF permit application, the OAH had jurisdiction under MCL 324.30319(2), which provides:
If a person is aggrieved by any action or inaction of the department, the person may request a formal hearing on the matter involved. The hearing shall be conducted by the department pursuant to the administrative procedures act of 1969, Act No. 306 of the Public Acts of 1969, being sections 24.201 to 24.328 of the Michigan Compiled Laws.
This provision clearly states that a person must be "aggrieved" by the DEQ's action or failure to act to have standing to request a formal hearing under the Administrative Procedures Act (APA), MCL 24.201 et seq. However, no definition of "aggrieved" is provided. "When determining the common, ordinary meaning of a word or phrase, consulting a dictionary is appropriate." Title Office, Inc. v. Van Buren Co. Treasurer, 469 Mich. 516, 522, 676 N.W.2d 207 (2004). Black's Law Dictionary (6th ed) defines "aggrieved" to mean, "Having suffered loss or injury; damnified; injured." An "aggrieved party" is defined as follows:
One whose legal right is invaded by an act complained of, or whose pecuniary interest is directly and adversely affected by a decree or judgment.... The word "aggrieved" refers to a substantial grievance, a denial of some personal, pecuniary or property right, or the imposition upon a party of a burden or obligation. [Id.; see also Dep't of Consumer & Industry Services v. Shah, 236 Mich.App. 381, 385, 600 N.W.2d 406 (1999).]
While petitioners argue that they were aggrieved by the issuance of the notice of violation and the order to restore, they fail to show how the issuance of these documents invaded a legal right or adversely affected a pecuniary or property interest. The APA indicates that a license "includes the whole or part of an agency permit...." MCL 24.205(1). Once given, a license becomes a protected property interest. Bundo v. Walled Lake, 395 Mich. 679, 692, 238 N.W.2d 154 (1976). However, because the same interest is not found in an initial request for a license, due process does not require that a hearing be held at this stage of the permit process. Id., citing Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). See also Wong v. City of Riverview, 126 Mich.App. 589, 592, 337 N.W.2d 589 (1983) (observing that "a first-time applicant [for a liquor license] is not even entitled to minimal dues process").
*73 Further, there is nothing in the language of either MCL 324.30306(5) or MCL 324.30319(2) that requires a contested case hearing be held with respect to an ATF permit application. "`Contested case' means a proceeding ... in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing." MCL 24.203(3). In Bois Blanc Island Twp. v. Natural Resources Comm., 158 Mich.App. 239, 244, 404 N.W.2d 719 (1987), this Court observed that the contested-case provisions of the APA do not apply to the issuance of initial permits by the Department of Natural Resources unless specifically required by statute. See MCL 24.291(1) ("When licensing is required to be preceded by notice and an opportunity for hearing, the provisions of this act governing a contested case apply."). The language of MCL 324.30306(5) does not require the opportunity for an evidentiary hearing in the circumstances of an ATF permit application. See Kelly Downs, Inc., v. Racing Comm., 60 Mich.App. 539, 547, 231 N.W.2d 443 (1975). Rather, the statute provides a mechanism for submitting an ATF permit application. And while MCL 324.30319(2) does refer to a formal hearing, it does so only in the context of acknowledging the right of an aggrieved person to request such a hearing. Significantly, the statute does not provide that the administrative agency must grant such a request. Rather, it only mandates that, if such a hearing is held, it be conducted according to the relevant provisions of the APA.
Petitioners also argue that the order to restore was issued prematurely. We disagree. MCL 324.30315(1) provides:
If, on the basis of information available to the department, the department finds that a person is in violation of this part or a condition set forth in a permit issued under section 30311 or 30312, the department shall issue an order requiring the person to comply with the prohibitions or conditions or the department shall request the attorney general to bring a civil action under section 30316(1). [Emphasis added.]
Under this provision, the DEQ was required to either issue the order to restore when it found that petitioners had violated the permit requirements or request the attorney general to pursue the matter. The statute does not provide for an alternative procedure to be followed before taking either action. Therefore, this assertion is without merit.
We also reject petitioners' assertion that their ATF permit application was submitted in a timely fashion. Petitioners did not submit their ATF permit application until after the DEQ had issued the order to restore. As previously discussed, the DEQ is not authorized to process an ATF permit application submitted after an order to restore has been issued. MCL 324.30306(5).
Petitioners also contend that they were denied due process when the OAH accepted a letter filed on behalf of the DEQ by an individual not licensed to practice law in Michigan. The letter raised the subject-matter jurisdiction by the OAH, and the OAH treated it as a motion for summary disposition. We disagree that petitioners were denied due process. "At the very least, due process requires the court (1) to offer to hold a hearing before it deprives the litigant of a property interest and (2) to provide notice of the hearing to the litigant." In re Adams Estate, 257 Mich.App. 230, 234, 667 N.W.2d 904 (2003). "In any proceeding involving notice, due process requires that the notice given be reasonably calculated, under all the circumstances, to apprise *74 interested parties of the pendency of the action and afford them an opportunity to present their objections." Vicencio v. Jaime Ramirez, MD, PC, 211 Mich.App. 501, 504, 536 N.W.2d 280 (1995).
The record indicates that the OAH immediately forwarded a copy of the letter to petitioners. The record also indicates that petitioners were given a full opportunity to brief and argue the issues raised in the letter. Further, the issue of subject-matter jurisdiction may be raised at any time, even on appeal. Phinney v. Perlmutter, 222 Mich.App. 513, 521, 564 N.W.2d 532 (1997). "`[B]ecause a court at all times is required to question sua sponte its own jurisdiction,'" Straus v. Governor, 459 Mich. 526, 532, 592 N.W.2d 53 (1999) (citation omitted), the OAH was obligated to consider whether it had jurisdiction regardless of the status of the person who sent the letter. Therefore, we conclude that petitioners were not denied due process. Vicencio, supra.
Petitioners also argue that they were deprived of due process because the letter was an improper ex parte communication. In support of this assertion, petitioners cite MCL 24.282, which provides:
Unless required for disposition of an ex parte matter authorized by law, a member or employee of an agency assigned to make a decision or to make findings of fact and conclusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact, with any person or party, nor, in connection with any issue of law, with any party or his representative, except on notice and opportunity for all parties to participate. This prohibition begins at the time of the notice of hearing. [Emphasis added.]
Here, the notice of hearing was sent after the OAH received the letter. Therefore, under the plain language of MCL 24.282, the letter was not an improper ex parte communication.
Additionally, petitioners argue that the DEQ should have been estopped from enforcing the permit requirements of part 303 of the NREPA because the DEQ knew of petitioners' construction and allowed it to progress to a substantial state of completion before issuing a notice of violation. Specifically, petitioners contend that the DEQ's agents were on or near their property during various stages of the garage's construction, yet did not give notice of the violation until the garage was nearly complete. However, the lower court record is devoid of any documentation supporting these assertions. Petitioners also argue that the DEQ should have known about the construction because it could have required the local agency to file a copy of the construction plan with the DEQ pursuant to 1999 AC, R 323.1702(3). Again, petitioners presented no documentary evidence showing that the plans were actually filed with respondent or that such filings were required in that community. Because this Court's review of this issue is limited to the lower court record, and the record is insufficient to support petitioners' claim, petitioners' argument must fail. Nationwide Mut. Ins. Co. v. Quality Builders, Inc., 192 Mich.App. 643, 648, 482 N.W.2d 474 (1992).
Finally, petitioners argue for the first time in their reply brief that the DEQ did not have the authority to issue an order to restore. "Reply briefs may contain only rebuttal argument, and raising an issue for the first time in a reply brief is not sufficient to present the issue for appeal." Blazer Foods, Inc. v. Restaurant Properties, Inc., 259 Mich.App. 241, 252, 673 N.W.2d 805 (2003); MCR 7.212(G). *75 Moreover, this issue was not contained in petitioners' application for leave to appeal. Therefore, we need not address the merits of this argument. MCR 7.205(D)(4). In any event, as we have discussed, the DEQ not only had the authority to issue an order to restore, it was required to do either that or report the matter to the attorney general. MCL 324.30315(1).
Affirmed.
NOTES
[1] Petitioners purchased the home in 1999. A permit had been issued to a previous owner in 1984 to construct the house in a wetland. The permit issued by the former Department of Natural Resources required that the driveway, garage, and walkway between the garage and house, as well as the house itself, be constructed above grade on piling foundations. Around 1990, a subsequent owner constructed an unauthorized addition to the garage. To resolve the statutory violation of building without a wetland permit issued pursuant to part 303 of the Natural Resources and Environmental Protection Act, MCL 324.30301 to 324.30323 that owner agreed to pay a fine and remove the unauthorized addition, including the pilings, and to revegetate the area. Apparently, the garage pad and girders were removed, but some or all of the pilings were not.