*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF FREDERICK LEWERENZ.

---

| | |
|---|---|
| NANCY WEISMAN, Former Personal Representative of the ESTATE OF FREDERICK LEWERENZ, | UNPUBLISHED<br>March 18, 2021 |
| Appellant, | |
| v | No. 350825<br>Oakland Probate Court |
| JAVMO, LLC, and KRISTINE LEWERENZ, | LC No. 2016-369267-DE |
| Appellees. | |

---

Before: O'BRIEN, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

This case involves the estate of a doctor whose professional corporation also had to be dissolved upon his death. The personal representative of the estate sold the company's assets and shuttered its doors, but did not pay off the company's debts before transferring the proceeds to the estate and distributing them to the heirs. The personal representative could not avoid the company's liabilities in this manner. We affirm the probate court's opinion and order remedying this error.

## I. FACTS

Dr. Frederick Lewerenz was the sole member of a PLC organized for his medical practice—Health and Wellness Medicine, PLC (PLC). In April and May 2011, the PLC entered into two six-year commercial lease agreements with JAVMO, LLC for three office suites. Dr. Lewerenz personally guaranteed the lease payments.

Dr. Lewerenz died in March 2016. His surviving family members included his wife, Kristine A. Lewerenz (Kristine), and his children. Dr. Lewerenz's will listed Kristine as the

-1-

preferred personal representative for his estate, but she designated Nancy Weisman, Dr. Lewerenz's office manager, as personal representative, and Weisman accepted the appointment.

JAVMO filed a notice of claim with Weisman for unpaid rents under the lease agreements. Weisman denied the request for payment, responding that the medical practice had vacated the property and had been dissolved. JAVMO then filed a proof of claim for $79,000 in the probate court based on Dr. Lewerenz's personal guaranty. Weisman did not file a disallowance of the claim in the probate action.

JAVMO filed a separate action in the Oakland County Business Court in January 2017 against both the PLC and the estate. In its complaint, JAVMO raised three counts: (1) breach of contract relating to the failure to make payments under the lease agreements, (2) anticipatory breach of contract, and (3) violation of the Uniform Voidable Transactions Act (UVTA), MCL 566.31 *et seq*. Under the UVTA claim, JAVMO alleged that Weisman and the PLC transferred assets such as patient files to another physician and paid the proceeds of that sale and the PLC's accounts receivable to Dr. Lewerenz's heirs. This was done to defraud the estate's and the PLC's creditors and resulted in the insolvency of the PLC, JAVMO asserted.

The estate and the PLC agreed to a consent judgment in the business court action, awarding JAVMO approximately $81,000 for the breach of contract claims. The judgment did not address the UVTA claim.

JAVMO then pursued collection of its judgment in the probate court and sought to void Weisman's transfers from the estate to the heirs. JAVMO contended that Weisman transferred the PLC's assets into the estate without properly winding up the affairs of the PLC, leaving the creditors hanging. Weisman then transferred the estate's assets to the estate's heirs without first paying off the estate's creditors. The probate court granted JAVMO's request to remove Weisman as personal representative. Weisman later stipulated to the entry of an order requiring her to file an accounting of her transactions as personal representative. She followed up by filing two accountings—one for the period of April 1, 2016 through March 31, 2017, and a second for April 1, 2017 through February 1, 2018. The first showed income of $133,456.08 and expenses, losses, and disbursements of $131,809.44; the second income of $48,034.20 and expenses, losses, and disbursements of $49,026.11.

After considering Weisman's accountings along with JAVMO's claims, the probate court set aside various transfers made by Weisman and ordered Kristine to return funds to the estate, which would permit payment to JAVMO. Based on emails Weisman sent to JAVMO and her act of collecting the PLC's accounts receivable, the probate court held that Weisman "was winding down the affairs of" the PLC. As such, the court determined that Weisman should have paid JAVMO before distributing the PLC's assets to the estate. Instead, the court determined, Weisman

"transferred business funds to the [e]state to avoid paying the creditors of the business by rendering the business insolvent."

Weisman appealed.[1]

## II. JURISDICTION

In the probate court action, Weisman challenged the propriety of the business court proceedings in defense of JAVMO's probate court motions to set aside her transfers to Kristine. Specifically, Weisman contended that the business court lacked subject matter jurisdiction over the action placed before it because the probate court had exclusive jurisdiction. Although the probate court should have permitted this collateral attack,[2] this error was ultimately harmless as Weisman's challenges lacked merit.

We review de novo questions of subject-matter jurisdiction and underlying issues of statutory and court rule interpretation. *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51; 832 NW2d 728 (2013); *Simcor Constr, Inc v Trupp*, 322 Mich App 508, 513; 912 NW2d 216 (2018). "Jurisdiction is the power of a court to act and the authority of a court to hear and determine a case." *In re AMB*, 248 Mich App 144, 166; 640 NW2d 262 (2001) (quotation marks and citation omitted). "Subject-matter jurisdiction is the right of the court to exercise judicial power over a class of cases, not the particular case before it." *Teran v Rittley*, 313 Mich App 197, 205; 882 NW2d 181 (2015) (quotation marks and citation omitted). "Jurisdiction of the subject matter of a judicial proceeding is an absolute requirement," and cannot be conferred by consent, waiver, or estoppel. *AMB*, 248 Mich App at 166 (quotation marks and citation omitted). Similarly, "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited . . . ." *Arbaugh v Y&H Corp*, 546 US 500, 514; 126 S Ct 1235; 163 L Ed 2d 1097 (2006) (quotation marks and citation omitted). "When a court lacks subject matter jurisdiction to hear and determine a claim, any action it takes, other than to dismiss the action, is void." *Bowie v Arder*, 441 Mich 23, 56; 490 NW2d 568 (1992).

"The circuit courts of this state are courts of general jurisdiction, with 'original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.' " *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 334; 901 NW2d 566 (2017), quoting MCL 600.605. Accordingly, "circuit courts are presumed to have subject-matter jurisdiction unless jurisdiction is expressly prohibited or given to

---

[1] JAVMO challenges this Court's jurisdiction because after Weisman filed her appeal, the probate court entered an amended order that effectuated no substantive change. The appealed order was no longer the final order, JAVMO contends. See MCR 5.801(A). In fact, the claim of appeal in connection with the initial order was proper because that order was the first that disposed of all the claims. See MCR 7.202(6)(a)(i). Alternatively, we would have no difficulty relating the amended order back to the initial one for this purpose.

[2] A "collateral attack occurs whenever a challenge is made to a judgment in any manner other than through a direct appeal." *People v Howard*, 212 Mich App 366, 369; 538 NW2d 44 (1995).

another court by constitution or statute." *In re Wayne Co Treasurer*, 265 Mich App 285, 291; 698 NW2d 879 (2005).

A business court is a statutorily created division within a circuit court. MCL 600.8033(1). "A business court has jurisdiction over business and commercial disputes in which equitable or declaratory relief is sought or in which the matter otherwise meets circuit court jurisdictional requirements." MCL 600.8035(1). "An action must be assigned to a business court if all or part of the action includes a business or commercial dispute." MCL 600.8035(3). "Business or commercial dispute" is defined by MCL 600.8031(1)(c)(*ii*) to include:

> An action in which 1 or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers, shareholders, members of a limited liability company [(an LLC)] or a similar business organization, directors, officers, agents, employees, suppliers, guarantors of a commercial loan, or competitors, and the claims arise out of those relationships.

A business or commercial dispute includes, but is not limited to, actions that involve "commercial real property." MCL 600.8031(2)(g). And "business or commercial disputes expressly exclude" proceedings under the EPIC. MCL 600.8031(3)(e).

In contrast, the probate court "is a court of limited jurisdiction, deriving all of its power from statutes." *Manning v Amerman*, 229 Mich App 608, 611; 582 NW2d 539 (1998). MCL 600.841(1)(a) provides that the probate court has jurisdiction and power as conferred upon it under the EPIC, MCL 700.1101 *et seq*.

MCL 700.1302 of the EPIC grants "*exclusive* legal and equitable jurisdiction" to the probate court, in relevant part, over:

> (a) A matter that relates to the settlement of a deceased individual's estate, whether testate or intestate, . . . including, but not limited to, all of the following proceedings:
>
> (*i*) The internal affairs of the estate.
>
> (*ii*) Estate administration, settlement, and distribution.
>
> (*iii*) Declaration of rights that involve an estate, devisee, heir, or fiduciary.
>
> (*iv*) Construction of a will.

MCL 700.1303(1), on the other hand, provides "*concurrent* legal and equitable jurisdiction," in relevant part, "to do all of the following in regard to an estate":

> (a) Determine a property right or interest.

\* \* \*

-4-

(f) Hear and decide an action or proceeding against a distributee of a fiduciary of the estate to enforce liability that arises because the estate was liable upon some claim or demand before distribution of the estate.

* * *

(h) Hear and decide a claim by or against a fiduciary or trustee for the return of property.

(i) Hear and decide a contract proceeding or action by or against an estate, trust, or ward.

"The underlying purpose and policy of this section is to simplify the disposition of an action or proceeding involving a decedent's . . . estate by consolidating the probate and other related actions or proceedings in the probate court." MCL 700.1303(3). But ultimately, if two courts have concurrent jurisdiction, then "a plaintiff may properly file its case in either" court. *Wayne Co Chief Executive v Governor*, 230 Mich App 258, 270; 583 NW2d 512 (1998). That is what happened here.

We acknowledge that the probate court incorrectly stated that the issue of the business court's subject matter jurisdiction had to be raised for the first time in the business court. It is well established that a challenge to subject matter jurisdiction may be raised for the first time on appeal or in a collateral attack in another action. *Maxwell v Dep't of Environmental Quality*, 264 Mich App 567, 574; 692 NW2d 68 (2004); *Altman v Nelson*, 197 Mich App 467, 472-473; 495 NW2d 826 (1992). But the probate court's error was harmless as the business court had jurisdiction over the action before it.

The business court was not divested of jurisdiction to resolve JAVMO's contractual claims just because JAVMO had already filed a proof of claim as a creditor in the probate court action. Weisman has provided no binding authority for her position that a probate court gains exclusive jurisdiction over matters otherwise subject to concurrent jurisdiction where a party files a proof of claim against an estate in the probate court. We need not develop this argument for her. *MOSES Inc v SEMCOG*, 270 Mich App 401, 417; 716 NW2d 278 (2006). In any event, the statutes do not work in Weisman's favor.

Under MCL 700.3804, a claimant against an estate must present a claim by (1) "delivering or mailing a written statement to the personal representative indicating the claim's basis" (2) "by filing with the court a written statement of the claim . . . and delivering or mailing a copy of the statement to the personal representative," or (3) by "commencing a proceeding to obtain payment of a claim against the estate in a court in which the personal representative may be subjected to jurisdiction." After a timely claim is presented to the personal representative, "the personal representative may deliver or mail a notice to a claimant stating that the claim has been disallowed in whole or in part." MCL 700.3806(1). The claim remains "disallowed" "unless the claimant commences a proceeding against the personal representative not later than 63 days after the mailing of the notice of disallowance." MCL 700.3806(1). Crucially, a "judgment in a proceeding in another court against a personal representative to enforce a claim against a decedent's estate constitutes an allowance of the claim." MCL 700.3806(5).

These provisions of the EPIC do not address the exclusive jurisdiction of the probate court, and instead acknowledge that a claimant may obtain a judgment against a personal representative in another court. Indeed, a judgment in the claimant's favor in another court becomes a claim allowance in the probate court.

Weisman also asserts that JAVMO's business court claims fall under the exclusive jurisdiction of the probate court because they concerned a declaration of rights that involved the estate. Weisman appears to rely on MCL 700.1302(a)(*iii*) to support her assertion. MCL 700.1302(a)(*iii*) provides that the probate court "has exclusive legal and equitable jurisdiction" over a "matter that relates to *the settlement* of a deceased individual's estate" which includes "[d]eclaration of rights that involve an estate . . . ." (Emphasis added.) "Settlement" is defined as "the full process of administration, distribution, and closing." MCL 700.1107(d). Further, MCL 700.1303(1)(i) grants the probate court concurrent jurisdiction to "[h]ear and decide a contract proceeding or action by or against an estate, trust, or ward."

Reading MCL 700.1302(a)(*iii*) as granting the probate court exclusive jurisdiction over all declarations of rights that involve an estate would render the grant of concurrent of jurisdiction in MCL 700.1303(1) nugatory. When interpreting a statute, a court "must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). Rather, the exclusive grant of jurisdiction under MCL 700.1302(a) is limited to matters that relate to "the settlement" of a deceased individual's estate, and MCL 700.1303(1) provides concurrent jurisdiction over various matters that do not directly relate to the settlement of an estate.

The first two counts raised by JAVMO in its business court complaint concerned only the breach of the lease agreements by the PLC, for which the estate was liable because of Dr. Lewerenz's personal guaranties. These breach-of-contract claims did not involve the administration, distribution, or closing of an estate. Therefore, the probate court did not have exclusive jurisdiction over them.

The third count of JAVMO's business court complaint alleged that the PLC and Weisman made voidable transfers to the estate of assets that were then distributed to its beneficiaries. This claim involved the distribution of an estate, and thus implicated the probate court's exclusive jurisdiction. Neither party provided this Court with the full record from the business court proceedings. From what is before us, however, it appears that the business court did not resolve the UVTA issue; it is not addressed in the final consent judgment. Accordingly, the business court did not invade the probate court's exclusive jurisdiction and the UVTA claim was properly raised by JAVMO when it returned to the probate court. The business court judgment is not void for lack of jurisdiction and Weisman is not entitled to relief.

### III. OPERATION OF THE EPIC, THE MLLCA, AND THE UVTA

Weisman also challenges the probate court's declaration that her distributions from the PLC to the estate and from the estate to the heirs were improper. These issues were resolved in a summary disposition ruling. We review de novo such rulings. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). In relation to motions under MCR 2.116(C)(10), the court must

consider the evidence presented "in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is warranted when the evidence fails to create a genuine issue of material fact to place before a fact finder. *Id.*

Before addressing Weisman's specific challenges, we give an overview of the ground to set aside her distributions—the UVTA. One type of voidable transfer under the UVTA "encompasses transfers made '[w]ith actual intent to hinder, delay, or defraud' a creditor and applies to transfers made either before or after the creditor's claim arose." *Dillard v Schlussel*, 308 Mich App 429, 446; 865 NW2d 648 (2014), quoting MCL 566.34(1)(a) (alteration in original). MCL 566.34(2) provides a number of factors to determine if there was actual intent to hinder, delay, or defraud a creditor with a transfer described under MCL 566.34(1)(a). The subdivisions of MCL 566.34(2) "correspond to the historical badges of fraud," which "are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them." *Dillard*, 308 Mich App at 449-450 (quotation marks and citation omitted). The badges of fraud include a transfer to an insider, the debtor being sued before the transfer, a transfer "of substantially all of the debtor's assets," and rendering the debtor insolvent by the transfer. MCL 566.34(2).

Weisman transferred all of the PLC's assets to Dr. Lewerenz's personal estate, rendering the PLC insolvent, and then distributed the estate proceeds, which included the PLC's assets, to Dr. Lewerenz's family. She did this despite entering a consent judgment with JAVMO for its outstanding rent invoices. Several badges of fraud existed.

However, Weisman contends that she did not fraudulently transfer property because she followed the mandates of the EPIC in all her actions. Under the EPIC, "a personal representative has the same power over the title to estate property that an absolute owner would have, in trust, however, for the benefit of creditors or others interested in the estate," which "may be exercised without notice, hearing, or court order." MCL 700.3711. According to MCL 700.3709, "a personal representative has a right to, and if necessary for purposes of administration, shall take possession or control of, the decedent's property," and "shall . . . take all steps reasonably necessary for the management, protection, and preservation of, the estate in the personal representative's possession."

MCL 700.3805 provides a hierarchy of estate property distribution, in relevant part, as follows:

> (1) If the applicable estate property is insufficient to pay all claims and allowances in full, the personal representative shall make payment in the following order of priority:
>
> (a) Costs and expenses of administration.
>
> (b) Reasonable funeral and burial expenses.
>
> (c) Homestead allowance.
>
> (d) Family allowance.
>
> (e) Exempt property.

(f) Debts and taxes with priority under federal law . . . .

(g) Reasonable and necessary medical and hospital expenses of the decedent's last illness . . . .

(h) Debts and taxes with priority under other laws of this state.

(i) All other claims.

(2) A preference shall not be given in the payment of a claim over another claim of the same class, and a claim due and payable is not entitled to a preference over a claim not due.

Weisman contends that she followed this chain of priority and there simply was nothing left to pay JAVMO. However, the EPIC was not the only game in play here. Dr. Lewerenz was the sole member of a PLC, which is governed by the Michigan Limited Liability Company Act (MLLCA), MCL 450.4101 *et seq*. Under the MLLCA, an LLC that is "formed to render 1 or more professional services . . . may be organized . . . as a professional limited liability company" (PLLC). MCL 450.4901(1). According to MCL 450.4210, an LLC "has all powers necessary or convenient to effect any purpose for which the company is formed, including all powers granted to corporations in the business corporation act [MCL 450.4101 *et seq*.]." Therefore, an LLC may make contracts, acquire and own assets, sue and be sued as if it were a natural person, and incur liabilities. MCL 450.1261.

Under MCL 450.4504(1), a membership interest in an LLC is personal property, and according to MCL 450.4504(2) "[a] member has no interest in specific [LLC] property." MCL 450.4502 provides that only the members of an LLC may authorize the dissolution of the LLC under MCL 450.4801(c). And MCL 450.4908(1) provides as follows:

A membership interest in a [PLLC] shall not be sold or transferred *except to a person who is eligible to be a member of the company or to the personal representative or estate of a deceased or legally incompetent member*. The personal representative or estate of the member may continue to hold a membership interest for a reasonable period but shall not be authorized to participate in any decisions concerning the rendering of professional service. [Emphasis added.]

Here, the probate court determined that the estate and the PLC were two separate entities, a finding that Weisman does not address. This was a prerequisite to the court's determination that the PLC had to be wound up and dissolved under the MLLCA before its proceeds could be transferred to the estate.

An LLC is an independent legal entity, MCL 450.1261, and a membership interest in an LLC is personal property, MCL 450.4504(1). MCL 450.4801 provides that an LLC dissolves only after certain conditions occur. MCL 450.4805(1) states that "the members or managers that have not wrongfully dissolved [an LLC] may wind up the company's affairs." And MCL 450.4808 provides how the assets of a winding up LLC should be distributed, with creditors receiving a high priority.

-8-

Under MCL 450.4908(1), only Dr. Lewerenz's membership interest in the PLC was transferred to Weisman as personal representative of his estate. Weisman insists that she was barred from receiving Dr. Lewerenz's membership interest in the PLC because MCL 450.4904 requires that members of a PLLC that provide medical services have professional licenses. However, the statutes only restrict Weisman from making decisions regarding the rendering of professional services; the statutes do not prevent her from winding up and properly dissolving the PLC. The PLC continued to exist as a separate entity until its business affairs were properly wound up; its assets did not simply devolve to the estate.

MCL 450.4801 provides for the dissolution and winding up of LLCs as follows:

[An LLC] is dissolved and its affairs shall be wound up when the first of the following occurs:

(a) Automatically, if a time specified in the articles of organization is reached.

(b) If a vote of the members or other event specified in the articles of organization or in an operating agreement takes place.

(c) The members entitled to vote unanimously vote for dissolution.

(d) Automatically, if a decree of judicial dissolution is entered.

(e) A majority of the organizers of the [LLC] vote for dissolution, if the [LLC] has not commenced business; has not issued any membership interests; has no debts or other liabilities; and has not received any payments, or has returned any payments it has received after deducting any amount disbursed for payment of expenses, for subscriptions for its membership interests.

Weisman took Dr. Lewerenz's interest in the PLC. Although she could not make decisions about rendering medical services, she certainly could wind up the business of the PLC and vote for its dissolution. Indeed, under the EPIC, "a personal representative has the same power over the title to estate property that an absolute owner would have, in trust, however, for the benefit of creditors or others interested in the estate," which "may be exercised without notice, hearing, or court order." MCL 700.3711. Weisman took control over Dr. Lewerenz's membership interest in the PLC by operation of law, subject to the restrictions imposed by MCL 450.4508(1).

Weisman makes a slew of other challenges to the rulings underlying the probate court's summary disposition of the case. She contends that she was a fiduciary to the heirs, not the creditors. She had no duty to keep JAVMO on notice of her activities and distributions and therefore JAVMO had no standing to seek an accounting. However, Weisman stipulated to the order requiring her to file the accounting, eliminating her ability to challenge it on appeal. *Bates Assoc, LLC v 132 Assoc, LLC*, 290 Mich App 52, 64; 799 NW2d 177 (2010).

Weisman contends that she did not convert any funds when she paid herself as the EPIC permits reasonable payment to a personal representative for his or her services. However, the

probate court dismissed JAVMO's conversion counts, rejecting any allegation that Weisman committed conversion.

Finally, Weisman argues, without explicit reference to the probate court's ruling, that she lacked fraudulent intent when she made distributions from the estate because she intended only to make distributions authorized by the EPIC, specifically MCL 700.3805. The probate court granted JAVMO'S motion for summary disposition in part because it ruled that Weisman "transferred business funds to the Estate to avoid paying the creditors of the [PLC] by rendering the [PLC] insolvent." This ruling was based in part on Weisman's testimony that she collected money that was owed to the PLC before transferring that money to the estate. Weisman does not point to any record evidence that demonstrates the existence of a genuine issue of any material fact, or otherwise address the propriety of the probate court's actual ruling. Therefore, she has failed to show that the court erred when it granted JAVMO's motion for summary disposition in that regard.

We affirm.


/s/ Colleen A. O'Brien
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher