*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PINEBROOK WARREN, LLC, GREENHOUSE
FARMS WARREN, LLC, HAPPY TRAILS
GROUP, INC., AUBREY VENTURES, LLC, BLUE
SPRUCE VENTURES, EMERALD BUSINESS
PARK, PC, LLC, DKB2, LLC, MPM-R WARREN,
LLC, and HRS RETAIL, LLC,

        Plaintiffs-Appellees,

and

ALTERNATIVE RX, LLC, HCM WARREN, LLC,
JAR CAPITAL OF WARREN, LLC, PURE GREEN
WARREN, LLC, PURE WARREN, LLC, KAPP
WALLED LAKE, LLC, and PURE ROOTS, LLC,

        Plaintiffs-Appellees/Cross-Appellants,

v

CITY OF WARREN, CECIL ST. PIERRE,
RONALD PAPANDREA, STEVEN WARNER,
RICHARD SABAUGH, and ETHAN VINSON,

        Defendants/Cross-Defendants-
        Appellees,

and

ROBERT BOCCOMINO and KEITH SADOWKSI,

        Defendants-Appellees,

and

CITY OF WARREN MEDICAL MARIHUANA
REVIEW COMMITTEE,

FOR PUBLICATION
August 25, 2022
9:25 a.m.

No. 355989
Macomb Circuit Court
LC No. 2019-004059-CZ

Defendant,

and

LIVWELL MICHIGAN, LLC, LE BATTLE CREEK, INC., WEISBERGER VENTURES II, LLC, VENDCO MICHIGAN, INC., LEVEL UP GARDEN, LLC, and 8TH STREET WELLNESS, PC, LLC,

Intervening Defendants/Cross-Plaintiffs,

and

SOZO HEALTH, INC.,

Intervening Defendant/Cross-Plaintiff-Appellant/Cross-Appellee,

and

989 VENTURES, LLC, doing business as NORTHERN ROOTS,

Intervening Defendant/Cross-Plaintiff-Cross-Appellee,

and

AE&K, LLC, BDECO I, INC., BDECO II, LLC, DNVK 4, LLC, MDMS GROUP, LLC, WARREN CAPITAL HOLDINGS, LLC, WEST FORT HOLDINGS, LLC, and FRAZHO PROVISIONING, LLC

Intervening Defendants.

PINEBROOK WARREN, LLC, GREENHOUSE FARMS WARREN, LLC, HAPPY TRAILS GROUP, INC., AUBREY VENTURES, LLC, BLUE SPRUCE VENTURES, EMERALD BUSINESS PARK, PC, LLC, DKB2, LLC, MPM-R WARREN, LLC, and HRS RETAIL, LLC,

Plaintiffs-Appellees,

and

ALTERNATIVE RX, LLC, HCM WARREN, LLC,
JAR CAPITAL OF WARREN, LLC, PURE GREEN
WARREN, LLC, PURE WARREN, LLC, KAPP
WALLED LAKE, LLC, and PURE ROOTS, LLC,

Plaintiffs-Appellees/Cross-Appellants,

v

CITY OF WARREN, CECIL ST. PIERRE,
RONALD PAPANDREA, STEVEN WARNER,
RICHARD SABAUGH, and ETHAN VINSON,

Defendants/Cross-Defendants-
Appellees,

and

ROBERT BOCCOMINO and KEITH SADOWSKI,

Defendants-Appellees,

and

CITY OF WARREN MEDICAL MARIHUANA
REVIEW COMMITTEE,

Defendant,

and

LIVWELL MICHIGAN, LLC,

Intervening Defendant/Cross-Plaintiff-
Appellant/Cross-Appellee,

and

SOZO HEALTH, INC., LE BATTLE CREEK, INC.,
WEISBERGER VENTURES II, LLC, VENDCO

No.   355994
Macomb Circuit Court
LC No.   2019-004059-CZ

-3-

MICHIGAN, INC., LEVEL UP GARDEN, LLC,
and 8TH STREET WELLNESS, PC, LLC,

> Intervening Defendants/Cross-
> Plaintiffs,

and

989 VENTURES, LLC, doing business as
NORTHERN ROOTS,

> Intervening Defendant/Cross-Plaintiff-
> Cross-Appellee,

and

AE&K, LLC, BDECO I, INC., BDECO II, LLC,
DNVK 4, LLC, MDMS GROUP, LLC, WARREN
CAPITAL HOLDINGS, LLC, WEST FORT
HOLDINGS, LLC, and FRAZHO PROVISIONING,
LLC,

> Intervening Defendants.

---

PINEBROOK WARREN, LLC, GREENHOUSE
FARMS WARREN, LLC, HAPPY TRAILS
GROUP, INC., AUBREY VENTURES, LLC, BLUE
SPRUCE VENTURES, EMERALD BUSINESS
PARK, PC, LLC, DKB2, LLC, MPM-R WARREN,
LLC, and HRS RETAIL, LLC,

> Plaintiffs-Appellees,

and

ALTERNATIVE RX, LLC, HCM WARREN, LLC,
JAR CAPITAL OF WARREN, LLC, PURE GREEN
WARREN, LLC, PURE WARREN, LLC, KAPP
WALLED LAKE, LLC, and PURE ROOTS, LLC,

> Plaintiffs-Appellees/Cross-Appellants,

v

No.  355995
Macomb Circuit Court

-4-

CITY OF WARREN, CECIL ST. PIERRE,                    LC No.  2019-004059-CZ
RONALD PAPANDREA, STEVEN WARNER,
RICHARD SABAUGH, and ETHAN VINSON,

        Defendants/Cross-Defendants-
        Appellees,

and

ROBERT BOCCOMINO and KEITH SADOWSKI,

        Defendants-Appellees,

and

CITY OF WARREN MEDICAL MARIHUANA
REVIEW COMMITTEE,

        Defendant,

and

LIVWELL MICHIGAN, LLC, SOZO HEALTH,
INC., LE BATTLE CREEK, INC., WEISBERGER
VENTURES II, LLC, and VENDCO MICHIGAN,
INC.,

        Intervening Defendants/Cross-
        Plaintiffs,

and

LEVEL UP GARDEN, LLC, and 8TH STREET
WELLNESS, PC, LLC,

        Intervening Defendants/Cross-
        Plaintiffs-Appellants/Cross-Appellees,

and

989 VENTURES, LLC, doing business as
NORTHERN ROOTS,

        Intervening Defendant/Cross-Plaintiff-
        Cross-Appellee,

-5-

and

AE&K, LLC, BDECO I, INC., BDECO II, LLC,
DNVK 4, LLC, WARREN CAPITAL HOLDINGS,
LLC, WEST FORT HOLDINGS, LLC, and
FRAZHO PROVISIONING, LLC,

        Intervening Defendants-
        Appellants/Cross-Appellees,

and

MDMS GROUP, LLC,

        Intervening Defendant.

---

PINEBROOK WARREN, LLC, GREENHOUSE
FARMS WARREN, LLC, HAPPY TRAILS
GROUP, INC., AUBREY VENTURES, LLC, BLUE
SPRUCE VENTURES, EMERALD BUSINESS
PARK, PC, LLC, DKB2, LLC, MPM-R WARREN,
LLC, and HRS RETAIL, LLC,

        Plaintiffs-Appellees,

and

ALTERNATIVE RX, LLC, HCM WARREN, LLC,
JAR CAPITAL OF WARREN, LLC, PURE GREEN
WARREN, LLC, PURE WARREN, LLC, KAPP
WALLED LAKE, LLC, and PURE ROOTS, LLC,

        Plaintiffs-Appellees/Cross-Appellants

v                                           No.  356005
                                                Macomb Circuit Court

CITY OF WARREN, CECIL ST. PIERRE,           LC No.  2019-004059-CZ
RONALD PAPANDREA, STEVEN WARNER,
RICHARD SABAUGH, and ETHAN VINSON,

        Defendants/Cross-Defendants-
        Appellees,

and

---

ROBERT BOCCOMINO and KEITH SADOWSKI,

Defendants-Appellees,

and

CITY OF WARREN MEDICAL MARIHUANA
REVIEW COMMITTEE,

Defendant,

and

LIVWELL MICHIGAN, LLC, SOZO HEALTH,
INC., LE BATTLE CREEK, INC., WEISBERGER
VENTURES II, LLC, VENDCO MICHIGAN, INC.,
LEVEL UP GARDEN, LLC, and 8TH STREET
WELLNESS, PC, LLC,

Intervening Defendants/Cross-
Plaintiffs,

and

989 VENTURES, LLC, doing business as
NORTHERN ROOTS,

Intervening Defendant/Cross-Plaintiff-
Cross-Appellee,

and

AE&K, LLC, BDECO I, INC., BDECO II, LLC,
DNVK 4, LLC, WARREN CAPITAL HOLDINGS,
LLC, WEST FORT HOLDINGS, LLC, and
FRAZHO PROVISIONING, LLC,

Intervening Defendants,

and

MDMS GROUP, LLC,

Intervening Defendant-
Appellant/Cross-Appellee.

-7-

PINEBROOK WARREN, LLC, GREENHOUSE
FARMS WARREN, LLC, HAPPY TRAILS
GROUP, INC., AUBREY VENTURES, LLC, BLUE
SPRUCE VENTURES, EMERALD BUSINESS
PARK, PC, LLC, DKB2, LLC, MPM-R WARREN,
LLC, and HRS RETAIL, LLC,

   Plaintiffs-Appellees,

and

ALTERNATIVE RX, LLC, HCM WARREN, LLC,
JAR CAPITAL OF WARREN, LLC, PURE GREEN
WARREN, LLC, PURE WARREN, LLC, KAPP
WALLED LAKE, LLC, and PURE ROOTS, LLC,

   Plaintiffs-Appellees/Cross-Appellants,

v

CITY OF WARREN, CECIL ST. PIERRE,
RONALD PAPANDREA, STEVEN WARNER,
RICHARD SABAUGH, and ETHAN VINSON,

   Defendants/Cross-Defendants-
   Appellees,

and

ROBERT BOCCOMINO and KEITH SADOWSKI,

   Defendants-Appellees,

and

CITY OF WARREN MEDICAL MARIHUANA
REVIEW COMMITTEE,

   Defendant,

and

LIVWELL MICHIGAN, LLC, SOZO HEALTH,
INC., LE BATTLE CREEK, INC., WEISBERGER
VENTURES II, LLC, VENDCO MICHIGAN, INC.,

No. 356011
Macomb Circuit Court
LC No. 2019-004059-CZ

-8-

LEVEL UP GARDEN, LLC, and 8TH STREET
WELLNESS, PC, LLC,

Intervening Defendants/Cross-
Plaintiffs

and

989 VENTURES, LLC, doing business as
NORTHERN ROOTS,

Intervening Defendant/Cross-Plaintiff-
Appellant/Cross-Appellee,

and

AE&K, LLC, BDECO I, INC., BDECO II, INC.,
DNVK 4, LLC, MDMS GROUP, LLC, WARREN
CAPITAL HOLDINGS, LLC, WEST FORT
HOLDINGS, LLC, and FRAZHO PROVISIONING,
LLC,

Intervening Defendants.

---

PINEBROOK WARREN, LLC, and HRS RETAIL,
LLC,

Plaintiffs-Appellees,

and

GREENHOUSE FARMS WARREN, LLC, HAPPY
TRAILS GROUP, INC., AUBREY VENTURES,
LLC, BLUE SPRUCE VENTURES,
ALTERNATIVE RX, LLC, HCM WARREN, LLC,
JAR CAPITAL OF WARREN, LLC, PURE GREEN
WARREN, LLC, PURE WARREN, LLC,
EMERALD BUSINESS PARK, PC, LLC, DKB2,
LLC, MPM-R WARREN, LLC, KAPP WALLED
LAKE, LLC, and PURE ROOTS, LLC,

Plaintiffs-Appellees/Cross-Appellants,

v                                                        No.   356017
                                                         Macomb Circuit Court

-9-

CITY OF WARREN, CECIL ST. PIERRE,                    LC No.   2019-004059-CZ
RONALD PAPANDREA, STEVEN WARNER,
RICHARD SABAUGH, ETHAN VINSON,

        Defendants/Cross-Defendants-
        Appellants/Cross-Appellees,

and

ROBERT BOCCOMINO, KEITH SADOWSKI, and
CITY OF WARREN MEDICAL MARIHUANA
REVIEW COMMITTEE,

        Defendants-Appellants/Cross-
        Appellees,

and

LIVWELL MICHIGAN, LLC, SOZO HEALTH,
INC., LE BATTLE CREEK, INC., WEISBERGER
VENTURES II, LLC, VENDCO MICHIGAN, INC.,
LEVEL UP GARDEN, LLC, 8TH STREET
WELLNESS, PC, LLC,

        Intervening Defendants/Cross-
        Plaintiffs,

and

989 VENTURES, LLC, doing business as
NORTHERN ROOTS,

        Intervening Defendant/Cross-Plaintiff-
        Cross-Appellee,

and

AE&K, LLC, BDECO I, INC., BDECO II, LLC,
DNVK 4, LLC, MDMS GROUP, LLC, WARREN
CAPITAL HOLDINGS, LLC, WEST FORT
HOLDINGS, LLC, and FRAZHO PROVISIONING,
LLC,

        Intervening Defendants,

and

JOHN LAYTON.

-10-

PINEBROOK WARREN, LLC, ALTERNATIVE RX, LLC, HCM WARREN, LLC, JAR CAPITAL OF WARREN, LLC, PURE GREEN WARREN, LLC, PURE WARREN, LLC, KAPP WALLED LAKE, LLC, and PURE ROOTS, LLC,

Plaintiffs-Appellees/Cross-Appellants,

and

GREENHOUSE FARMS WARREN, LLC, HAPPY TRAILS GROUP, INC., AUBREY VENTURES, LLC, BLUE SPRUCE VENTURES, EMERALD BUSINESS PARK, PC, LLC, DKB2, LLC, MPM-R WARREN, LLC, and HRS RETAIL, LLC,

Plaintiffs-Appellees,

v

CITY OF WARREN, CECIL ST. PIERRE, RONALD PAPANDREA, STEVEN WARNER, RICHARD SABAUGH, and ETHAN VINSON,

Defendants/Cross Defendants-Appellees,

and

ROBERT BOCCOMINO and KEITH SADOWSKI,

Defendants-Appellees,

and

CITY OF WARREN MEDICAL MARIHUANA REVIEW COMMITTEE,

Defendant,

and

No. 356023
Macomb Circuit Court
LC No. 2019-004059-CZ

-11-

LIVWELL MICHIGAN, LLC, SOZO HEALTH, INC., LEVEL UP GARDEN, LLC, and 8TH STREET WELLNESS, PC, LLC,

                Intervening Defendants/Cross-Plaintiffs,

and

LE BATTLE CREEK, INC., WEISBERGER VENTURES II, LLC, and VENDCO MICHIGAN, INC.,

                Intervening Defendants/Cross-Plaintiffs-Appellants/Cross-Appellees,

and

989 VENTURES, LLC, doing business as NORTHERN ROOTS,

                Intervening Defendant/Cross-Plaintiff-Cross-Appellee,

and

AE&K, LLC, BDECO I, INC., BDECO II, LLC, DNVK 4, LLC, MDMS GROUP, LLC, WARREN CAPITAL HOLDINGS, LLC, WEST FORT HOLDINGS, LLC, and FRAZHO PROVISIONING, LLC,

                Intervening Defendants.

---

PINEBROOK WARREN, LLC, GREENHOUSE FARMS WARREN, LLC, HAPPY TRAILS GROUP, INC., AUBREY VENTURES, LLC, BLUE SPRUCE VENTURES, ALTERNATIVE RX, LLC, HCM WARREN, LLC, JAR CAPITAL OF WARREN, LLC, PURE GREEN WARREN, LLC, PURE WARREN, LLC, EMERALD BUSINESS PARK, PC, LLC, DKB2, LLC, MPM-R WARREN, LLC, KAPP WALLED LAKE, LLC, PURE ROOTS, LLC, and HRS RETAIL, LLC,

Plaintiffs-Appellees,

v

CITY OF WARREN, CECIL ST. PIERRE,
RONALD PAPANDREA, STEVEN WARNER,
RICHARD SABAUGH, ETHAN VINSON,
ROBERT BOCCOMINO, and KEITH SADOWSKI,

Defendants-Appellees,

and

CITY OF WARREN MEDICAL MARIHUANA
REVIEW COMMITTEE,

Defendant,

and

LIVWELL MICHIGAN, LLC, SOZO HEALTH,
INC., LE BATTLE CREEK, INC., WEISBERGER
VENTURES II, LLC, VENDCO MICHIGAN, INC.,
LEVEL UP GARDEN, LLC, 8TH STREET
WELLNESS, PC, LLC, 989 VENTURES, LLC,
doing business as NORTHERN ROOTS, AE&K,
LLC, BDECO I, INC., DNVK 4, LLC, MDMS
GROUP, LLC, WARREN CAPITAL HOLDINGS,
LLC, WEST FORT HOLDINGS, LLC, and
FRAZHO PROVISIONING, LLC,

Intervening Defendants-Appellants,

and

BDECO II, LLC,

Intervening Defendant.

No.   359269
Macomb Circuit Court
LC No.   2019-004059-CZ

PINEBROOK WARREN, LLC, GREENHOUSE
FARMS WARREN, LLC, HAPPY TRAILS
GROUP, INC., AUBREY VENTURES, LLC, BLUE
SPRUCE VENTURES, ALTERNATIVE RX, LLC,
HCM WARREN, LLC, JAR CAPITAL OF
WARREN, LLC, PURE GREEN WARREN, LLC,

-13-

PURE WARREN, LLC, EMERALD BUSINESS
PARK, PC, LLC, DKB2, LLC, MPM-R WARREN,
LLC, KAPP WALLED LAKE, LLC, PURE
ROOTS, LLC, and HRS RETAIL, LLC,

        Plaintiffs-Appellees,

v

CITY OF WARREN, CECIL ST. PIERRE,
RONALD PAPANDREA, STEVEN WARNER,
RICHARD SABAUGH, ETHAN VINSON,
ROBERT BOCCOMINO, KEITH SADOWSKI, and
CITY OF WARREN MEDICAL MARIHUANA
REVIEW COMMITTEE,

        Defendants-Appellants,

and

LIVWELL MICHIGAN, LLC, SOZO HEALTH,
INC., LE BATTLE CREEK, INC., WEISBERGER
VENTURES II, LLC, VENDCO MICHIGAN, INC.,
LEVEL UP GARDEN, LLC, 8TH STREET
WELLNESS, PC, LLC, 989 VENTURES, LLC,
doing business as NORTHERN ROOTS, AE&K,
LLC, BDECO I, INC., BDECO II, LLC, DNVK 4,
LLC, MDMS GROUP, LLC, WARREN CAPITAL
HOLDINGS, LLC, WEST FORT HOLDINGS,
LLC, and FRAZHO PROVISIONING, LLC,

        Intervening Defendants.

No.  359285
Macomb Circuit Court
LC No.  2019-004059-CZ

Before:  SAWYER, P.J., and SHAPIRO and REDFORD, JJ.

REDFORD, J.

       These consolidated appeals and cross-appeals arise from a dispute over the City of Warren's (the City) selection of the entities that it licensed to sell medical marijuana.[1]  The trial court ultimately determined that defendants, the City, and the members of the City's Medical Marihuana Review Committee (the Review Committee)—Cecil St. Pierre, Ronald Papandrea,

---

[1] By convention, this Court uses the spelling "marijuana" rather than "marihuana."  See *People v Carruthers*, 301 Mich App 590, 593 n 1; 837 NW2d 16 (2013).

-14-

Steven Warner, and Richard Sabaugh—violated the Open Meetings Act (OMA), see MCL 15.261 *et seq.*, in relation to selecting applicants for issuing licenses to sell medical marijuana in the City.

For the reasons we set forth below, we conclude that the Review Committee was not a public body subject to the OMA. We also conclude that plaintiffs' due-process claims lacked merit and were properly dismissed by the trial court. Therefore, we reverse the trial court's granting of summary disposition to plaintiffs and the setting aside of the licenses issued to intervening plaintiffs by the City of Warren, and affirm the trial court's denial of plaintiffs' due-process claims and grant of summary disposition in favor of defendants on such claims, and grant such other relief as is indicated herein.

## I. OVERVIEW OF CASES

### A. THE CITY OF WARREN MEDICAL MARIHUANA REGULATORY ORDINANCE

In January 2019, the Warren City Council adopted a " 'medical marihuana regulatory ordinance' " (the Marijuana Ordinance), Warren Code, § 19.5-1 *et seq.*[2] The Marijuana Ordinance sought to implement the local provisions governing the sale of marijuana consistent with then-governing state law. See Warren Code, § 19.5-3. The Marijuana Ordinance allowed, in relevant part, for the licensing of provisioning centers, which were defined to be licensees who were authorized to purchase marijuana from a grower or processor and sell it to registered qualifying patients. See Warren Code, § 19.5-6.

In the ordinance, the City created the Review Committee to review applications for provisioning center licenses. See Warren Code, § 19.5-13(4). The Review Committee was made up of the "City Attorney, or his designee, the Director of the Public Service Department, or his designee, and the members of the Medical Marihuana Committee or alternates of the City Council, as appointed by City Council." Warren Code, § 19.5-13(4). The Review Committee was required to consider applications for licenses and score 17 factors with a score from 0 to 10. See Warren Code, § 19.5-13(4)(b). The Review Committee did this over a period of serval months and eventually evaluated and scored 65 license applicants. At the completion of their review, pursuant to the ordinance, the Review Committee forwarded all 65 applications together with their scores and recommendations to the City Council. The Review Committee did not approve or disapprove a single applicant; only the City Council could approve the issuance of a license. See Warren Code, § 19.5-14(1). The ordinance originally allowed for the issuance of 10 licenses and this number was eventually changed to 15 licenses. See Warren Code, § 19.5-7(3); see also Warren City Ordinance No. 80-778. If there were more applicants than available licenses, the City Council had to rank the applicants; in setting the rank, the City Council had to consider the factors stated

---

[2] The City has significantly amended the ordinance since the inception of this litigation. Therefore, all citations are to the version of the ordinance then in force. Warren City Ordinance No. 80-772. That ordinance may be viewed online through the municipal code website at: Municode, *Code of Ordinances of the City of Warren, Michigan* https://library.municode.com/mi/warren/ordinances/code_of_ordinances?nodeId=960256

 (accessed June 23, 2022).

under Warren Code, § 19.5-13(4)(b), in addition to factors related to the plan for the provisioning center. See Warren Code, § 19.5-14(2). An applicant also had the right to appeal the decision to deny a license to the circuit court. See Warren Code, § 19.5-17(2).

## B. THE LITIGATION IN THE TRIAL COURTS

Certain applicants sought and obtained at least partial relief in the trial courts of Macomb County challenging the work of the Review Committee. The challenges alleged violations of the OMA, denial of due process, and other theories which eventually resulted in the trial court granting summary disposition in favor of plaintiffs, Pinebrook Warren, LLC; Greenhouse Farms Warren, LLC; Happy Trails Group, Inc.; Aubrey Ventures, LLC; Blue Spruce Ventures; Emerald Business Park, PC, LLC; DKB2, LLC; MPM-R Warren, LLC; HRS Retail, LLC; Alternative Rx, LLC; HCM Warren, LLC; JAR Capital of Warren, LLC; Pure Green Warren, LLC; Pure Warren, LLC; Kapp Walled Lake, LLC; and Pure Roots, LLC, which were all entities that had applied for and been denied licenses. That order also invalidated the licenses to sell marijuana that had been issued to the intervening defendants, Livwell Michigan, LLC; LE Battle Creek, Inc.; Weisberger Ventures II, LLC; VendCo Michigan, Inc.; Level Up Garden, LLC; 8th Street Wellness, PC, LLC; Sozo Health, Inc.; 989 Ventures, LLC, which did business as Northern Roots; AE&K, LLC; BDECo Inc.; DNVK 4, LLC; MDMS Group, LLC; Warren Capital Holdings, LLC; West Fort Holdings, LLC; and Frazho Provisioning, LLC. The trial court also dismissed the due-process claims that plaintiffs had asserted against the City.

## C. THE APPEALS RAISED

In the appeals in Docket Nos. 355989, 355994, 355995, 356005, 356011, 356017, and 356023, the primary issue raised by defendants and intervening defendants is whether the trial court erred when it determined that the City violated the OMA and—on that basis—invalidated the City Council's decision to issue licenses. For the various cross-appeals in those cases, the primary issue is whether the trial court erred when it dismissed plaintiffs' claims against the City for violations of substantive and procedural due process.

In Docket Nos. 359269 and 359285, intervening defendants in the underlying case appeal by leave granted the trial court's order invalidating the City's decision to reissue licenses to them as part of a settlement agreement entered into by the City and intervening defendants in a different case. Intervening defendants argue that the trial court lacked the authority to invalidate the licenses that had been issued under the agreement.

## D. SUMMARY OF THIS COURT'S DECISION

For the reasons explained in this opinion, we conclude that defendants and intervening defendants have identified errors respecting the trial court's resolution of the OMA claims warranting appellate relief. We conclude that plaintiffs have not identified any errors warranting relief in the trial court's resolution of their claims involving due process. Accordingly, in Docket Nos. 355989, 355994, 355995, 356005, 356011, 356017, and 356023, we reverse and vacate the trial court's opinion and order, entered April 14, 2020 (April 2020 Opinion and Order), and its order denying reconsideration, which it entered on December 22, 2020. For the claims in Docket Nos. 359269 and 359285, we vacate the trial court's order of October 26, 2021, because it based

-16-

its ruling and order on the erroneous April 2020 Opinion and Order, and the appellate relief granted regarding the OMA claims renders the trial court's October 26, 2021 order void.

## II. APPEALS INVOLVING THE OMA CLAIMS

### A. STANDARD OF REVIEW

Appellants and cross-appellants have raised various claims of error involving the trial court's decision to grant summary disposition in favor of plaintiffs on the OMA claims.[3] We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). We also review de novo whether the trial court properly interpreted and applied the relevant statutes and ordinances. *Soupal v Shady View, Inc*, 469 Mich 458, 462; 672 NW2d 171 (2003). We review for an abuse of discretion a trial court's decision to invalidate a decision under the OMA and its decision to grant equitable relief under the OMA. *Citizens For A Better Algonac Community Sch v Algonac Community Sch*, 317 Mich App 171, 177; 894 NW2d 645 (2016). We also review for an abuse of discretion a trial court's decision on a motion for reconsideration. *Woods v SLB Prop Management, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008). A trial court abuses its discretion when it selects an outcome that falls outside the range of principled outcomes, or when it premises its decision on a misunderstanding of controlling legal principles. *Davis v Detroit Fin Review Team*, 296 Mich App 568, 612-613; 821 NW2d 896 (2012).

### B. ANALYSIS

In January 2020, Happy Trails moved for partial summary disposition under MCR 2.116(C)(10). It argued that the undisputed evidence showed that the Review Committee violated the OMA by holding closed meetings that were required to be open to the public and did not otherwise comply with the requirements of the OMA. It further argued that the Review Committee had not rectified its error by reenacting its decisions. Because the City Council adopted the Review Committee's decision made contrary to the OMA (and its own ordinances), Happy Trails asked the trial court to invalidate the decisions premised on violations of the OMA. It maintained that the only proper remedy required invalidating the decisions because then the City would have the obligation to "redo the process properly in accordance with the requirements of the [Marijuana] Ordinance and applicable law."

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). The moving party is entitled to relief when, except for the amount of damages, "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10).

As the moving party, Happy Trails had the initial burden to identify the issues about which it claimed there were no genuine issues as to any material fact, and to support its motion by citation

---

[3] For the sake of brevity, we will not summarize the arguments by each party to these appeals except where necessary for clarity.

to evidence. See *Barnard Mfg*, 285 Mich App at 369-370. Happy Trails asserted that no factual dispute existed that the Review Committee was subject to the OMA, violated the OMA, and, as a result, the trial court had the discretion to invalidate the Review Committee's decisions as a matter of law. Therefore, Happy Trails's right to summary disposition depended on whether it established that—given the undisputed facts—the OMA applied to the Review Committee action, whether the Review Committee's decisions were made in violation of the OMA, and finally whether the Review Committee's decisions were subject to invalidation under the OMA.

## 1. PUBLIC BODY

Under the OMA, the Legislature established rules that apply to public bodies. See MCL 15.263. A public body must hold its meetings open to the public, in a place that is available to the general public, allow the public to record the meeting, MCL 15.263(1), and allow persons who attend the meeting to address the meeting, MCL 15.263(5). A public body must also make its decisions at a meeting that is open to the public, see MCL 15.263(2), and conduct its deliberations in a meeting that is open to the public, see MCL 15.263(3). Notably, the Legislature provided an exception to the open meeting requirements for deliberations; a public body may enter into a closed session to deliberate certain matters as provided under MCL 15.267 and MCL 15.268. See MCL 15.263(3). The Legislature did not provide any exceptions to the requirements that the meetings themselves begin in a session open to the public, that the public be allowed to address the meeting, and that the public body make its decisions while the meeting is open to the public.

Because the OMA only applies to public bodies, the threshold issue for any OMA claim is whether the entity at issue constitutes a public body within the meaning of the OMA. See *Herald Co v Bay City*, 463 Mich 111, 129; 614 NW2d 873 (2000). The OMA defines a public body, in relevant part, as "any state or local legislative or governing body, including a board, commission, committee, subcommittee, authority, or council, that is empowered by state constitution, statute, charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function." MCL 15.262(a).

The first inquiry in determining whether an entity is a public body under the OMA is to evaluate whether the entity is a legislative body or a governing body. See *Davis*, 296 Mich App at 591 (noting that, to be a public body, the entity must be a state or local legislative body or governing body). A legislative body is a body that makes or enacts laws or otherwise brings something into or out of existence through the enactment of laws. *Id*. at 592-593. A governing body is a body that makes or administers public policy, or otherwise regulates or controls a political subdivision. *Id*. at 593-594. A body does not have to be the supreme governing body of a political subdivision to be a governing body under the OMA; but it must make or administer public policy for a political unit or make decisions by a determination, action, vote, or disposition for that political subdivision. *Id*. at 597.

If it is determined that a body is a legislative or governing body, the next inquiry is whether it has been empowered by "state constitution, statute, charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function." MCL 15.262(a); see also *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 225; 507 NW2d 422 (1993). A body that can only make recommendations is not a governing body for purposes of the OMA because its authority does not include the power to

effectuate or formulate public policy. See *Davis*, 296 Mich App at 605-606. In addition to these criteria, in *Booth*, our Supreme Court held that a person or other body may be deemed a public body under certain circumstances.

In *Booth*, our Supreme Court considered a situation in which the board of regents for the University of Michigan sought to hire a new president. The evidence showed that the board did not want to hold public meetings during the search, so it delegated its authority to winnow the candidates to a particular regent and to subquorum groups of regents. Over time, the regent and subquorum groups reduced the total number of candidates from 250 candidates to one candidate.

In this process, the board of regents had selected one member of the board to act as a selection committee. In the first phase of review, this member winnowed down the list of 250 candidates to 70 candidates. He made phone calls, had meetings and sought to obtain the sense of the board members and subgroups appointed to assist the board. In that and every phase, any board member could have asked for a candidate who had been removed from consideration to be put back into the pool of actively participating candidates. Next the board member further narrowed the list of candidates from 70 to 30 by rating and receiving ratings of candidates, tallying those scores and discussing the process with each and every member of the board of regents. Next, each of the 30 remaining candidates was contacted and about half of the candidates self-selected out of further participation. Next, small, subquorum groups of regents went to various cities and met with candidates. A closed meeting occurred where no vote was taken but candidates were discussed. Eventually one candidate was recommended and the person's name was forwarded to the entire board which then held a public meeting and voted to hire that candidate. See *Booth*, 444 Mich at 215-220.

Our Supreme Court held that the board was a public body and that the selection of a president for the university was one of the board's most important exercises of governmental authority. *Id*. at 225. The Court recognized that the regent and subquorum groups were the persons who winnowed the total number of candidates, but it rejected the contention that the regent and subquorum groups were not subject to the OMA. It held that the regent and subquorum groups constituted public bodies under the OMA because the board was itself a public body and it delegated its authority to the regent and subquorum groups. *Id*. at 225. The Court rejected the university's attempt to elevate form over substance by asserting that one man could not be a committee. The Court explained that the question was whether the board delegated its authority to choose a president to one or more persons. If it did, then the OMA applied to those persons because the OMA applied to the board. *Id*. at 225-226; see also *Herald*, 463 Mich at 134 (summarizing the decision in *Booth* and stating that the distinguishing feature between the facts of its case and those in *Booth* was that the public body delegated its authority to a regent and subquorum groups that had no independent authority to act); *Davis*, 296 Mich App 588-591 (recognizing that, under the decisions in *Booth* and *Herald*, if a public body delegates its authority to act to a subcommittee, that body will be deemed a public body for purposes of applying the OMA).

Our Supreme Court clarified the delegation exception in *Herald*. Although the Court in *Herald* noted that evidence established that the public body at issue in *Booth* had delegated its authority to a regent and subcommittees to evade the requirements of OMA, the Court did not hold that an intent to evade the requirements of the OMA was the dispositive question. *Herald*, 463

Mich at 134. Rather, the Court held that the relevant inquiry is whether the body had been delegated authority by a public body or whether the body had been granted independent authority to act. See *id*. ("The important distinguishing feature of *Booth* was that the board was clearly a 'public body' that was subject to the OMA, and the various regents and subquorum groups had no *independent* authority to narrow the field, make a recommendation, or select a president.") (emphasis added). If the body did not have the independent authority to act, but instead had to rely on the delegation of authority from the public body, then that body would also be deemed a public body. In *Herald* the Court then explained that, because the city charter gave the city manager independent authority to perform the function at issue, the facts in *Herald* were not analogous to those of *Booth*. *Id*. at 134-135. Accordingly, a public body is either a legislative body or a governing body that has been "empowered by state constitution, statute, charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function," MCL 15.262(a), or a person or body that has been delegated the authority to act by a public body that itself is subject to the OMA, see *Booth*, 444 Mich at 225.

In this case, the City—through its City Council—enacted the Marijuana Ordinance that created the Review Committee. As a home rule city, the City had the authority to enact ordinances as a valid exercise of its police power so long as the ordinance did not conflict with the constitution or general law. See *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 253-254; 566 NW2d 514 (1997).

Happy Trails did not present any evidence that the City Council delegated its own authority to the Review Committee. Rather, the Marijuana Ordinance established the Review Committee and delineated the nature and extent of its role in the application review process. Accordingly, this case does not involve the type of delegated authority that was at issue in *Booth*. To the contrary, the Review Committee had independent authority to act as provided under the Marijuana Ordinance. See *Herald*, 463 Mich 134-135. Moreover, it does not matter that the Marijuana Ordinance was enacted by a public body. In *Davis*, this Court examined whether the financial review team was a public body by reviewing the authority delegated to it under the statutory scheme. If every entity created by statute (or other law) constituted a public body because a legislative body enacted the law, there would have been no need to examine the authority delegated to the financial review team under the statute. Yet this Court determined that whether the financial review team constituted a public body depended solely on the authority independently delegated to the team by statute. See *Davis*, 296 Mich App at 594. Consequently, in this case, whether the Review Committee constituted a public body depended on the extent of the authority granted to the Review Committee under the Marijuana Ordinance, see *Herald*, 463 Mich at 134-135.

Whether a local body is a public body under the OMA must be ascertained by looking at the four corners of the document creating the body—it does not depend on the body's actual exercise of authority. See *Davis*, 296 Mich App at 594. For that reason, plaintiffs' argument that the Review Committee, in effect, selected the entities that received the licenses because the City Council adopted the Review Committee's recommendations, was irrelevant. The key question was not what actions the Review Committee did or did not take, or how the City Council reacted to those decisions; it was whether the Review Committee, in its own right, constituted a legislative body or governing body empowered to exercise governmental or proprietary authority or to perform a governmental or proprietary function. See MCL 15.262(a); *Davis*, 296 Mich App

at 590-591. To make that determination, this Court looks to the four corners of the law establishing the body to determine whether the law created a governing body and authorized it to exercise independent governmental or proprietary authority, or to perform an independent governmental or proprietary function, which amounted to independent decision-making authority to effectuate public policy. See *Davis*, 296 Mich App at 600.

When interpreting an ordinance, this Court must discern and give effect to the intent of the drafter as demonstrated in the language of the ordinance. See *McMillan v Douglas*, 322 Mich App 354, 357; 913 NW2d 336 (2017). This Court construes the ordinance as a whole and affords the words used their plain and ordinary meaning. *Id*. If the language of an ordinance is clear and unambiguous, this Court will enforce it as written. *Id*.

The State Legislature gave municipalities the authority to pass ordinances regulating marijuana facilities. See MCL 333.27205(1). The City Council passed such an ordinance that included extensive requirements for applications for a Medical Marijuana Facilities License, including that applicants had to submit a formal application with a facility and site plan to the City. Marijuana Ordinance, § 19.5-12. The ordinance established an application review process that required applicants to submit all application documents and plans to the City's chief zoning inspector to determine whether the application would "go for review" or had deficiencies warranting notification of denial with the right to appeal to the City Council. Marijuana Ordinance, § 19.5-13(1) - (3).

If the zoning inspector approved an application, it would "go for review" to the Review Committee. Marijuana Ordinance, § 19.5-13(2). The ordinance required that such applications and plans "*shall be transmitted to the Review Committee for approval*." Marijuana Ordinance, § 19.5-13(4)(a). When reviewing "plans and applications" the Review Committee was required to score 17 individual factors from 0 to 10 respecting the degree of compliance with each specific factor. Marijuana Ordinance, § 19.5-13(4)(b). After its completion of that process, the ordinance required that the Review Committee "*shall forward the scores and applications to the City Council with recommendations*." Marijuana Ordinance, § 19.5-14(1).

The ordinance provided that the City Council alone had the authority to approve issuance of provisioning center licenses and further specified how it would make the ultimate selection of the applicants who would be issued licenses:

> Council shall confirm compliance with all requirements and factors in the granting of Licenses. If the number of applicants meeting the requirements herein exceed the number of available licenses, the Council shall rank the applicants in order, considering the factors outlined above and consideration of the Plan proposed for the Provisioning Center; new construction and thereafter reconstruction of buildings shall be ranked equal than those applications proposing existing buildings. The capitalization and improvements to real estate shall be ranked higher than proposed existing buildings. Ranking shall be based upon a 0 to 10 scale for each factor including zoning compliance with a 0 meaning does not comply and a 10 meaning exceeds compliance. [Marijuana Ordinance, § 19.5-14(2).]

Reading the Marijuana Ordinance in context and as a coherent whole, it is evident that the Review Committee did not constitute a governing body authorized by the ordinance to perform a governmental function. See MCL 15.262(a). The ordinance did not grant the Review Committee authority to administer public policy for a political unit or make decisions by a determination, action, vote, or disposition for that political subdivision. The ordinance required the Review Committee to perform an important review function, but the City Council had sole authority to make the ultimate selection of the applicants it deemed worthy of being licensed to own and operate a medical marijuana provisioning center in the City. Determining which persons or entities are to be licensed to conduct business within a locale is a quintessential function of local government. The licensing process itself requires consideration of multiple factors—even in the absence of delineated factors as found in the Marijuana Ordinance. Although the Review Committee played a role in the process, the ordinance plainly required the City Council to make the final assessment of the worthiness of any particular applicant for a license. The ordinance tasked the City Council with effectuating public policy by making the ultimate decision which of the applicants to license. The ordinance granted the Review Committee no authority to reduce the number of applicants following its review, nor did it grant the Review Committee authority to deny any applicant a license.

The City defendants and intervenors argued in the trial court, and continue to argue on appeal, that the Review Committee merely acted as an advisory body that did not have the power to make decisions, so that it was not a governing body as explained by this Court in *Davis*. See *Davis*, 296 Mich App at 601-609. We conclude that the plain unambiguous language of the Marijuana Ordinance supports their contention.

We hold that plain language of the Marijuana Ordinance establishes that the Review Committee is neither a legislative body nor a governing body under the OMA, and the City did not by the ordinance delegate decision-making authority to the Review Committee. Accordingly, the trial court erred when it ruled that the delegation rule stated in *Booth* applied to this case.

That the Marijuana Ordinance § 19.5-13(4)(a) states that applications must be transmitted to the Review Committee "for approval" is not determinative because the ordinance must be read as a whole. Having done so, we conclude that the Marijuana Ordinance did not grant the Review Committee authority to approve applicants but required the City Council to retain and exercise the decision-making authority to approve applications and issue licenses. The ordinance gave the Review Committee no authority to approve or disapprove of applications. The Review Committee scored factors and made recommendations and acted solely as an advisory body. Unlike the regent and subquorum groups in *Booth*, the Review Committee had no power to winnow out applicants from the pool of eligible applicants. A body that can only make recommendations is not a governing body for purposes of the OMA because its authority does not include the power to effectuate or formulate public policy. See *Davis*, 296 Mich App at 605-606.

Notably, the Marijuana Ordinance required the City Council to consider applications and confirm their compliance with all requirements and factors, and if more applicants applied than available licenses, the City Council had to rank the applicants, independently consider the specified factors, and consider the applicant's proposed plans. The ordinance makes clear that the City Council had authority to revisit the rankings made by the Review Committee and had the authority to make its own determination for approving applications.

Under the Marijuana Ordinance, the Review Committee was not granted power to effectuate public policy. It had no authority to disapprove applicants and thereby eliminate them from consideration.

During the application process, pursuant to the ordinance, 65 license applicants submitted their materials to the City. Eventually, the Review Committee received the materials for 65 applicants, interviewed applicants, reviewed the applications, and each Review Committee member individually assigned a score to each applicant for each of the 17 factors. After this was completed, all 65 applications were forwarded to the City Council with the Review Committee's recommendations. Thereafter, the City Council, in an open meeting voted on the applications. In a 5-2 vote, the City Council selected the 15 successful applicants.[4] The Marijuana Ordinance gave the powers to perform governmental or proprietary functions to the City Council alone. Because the Review Committee was not a local governing body that had been empowered by ordinance to exercise a governmental or proprietary function, it did not constitute a public body under OMA. See MCL 15.262(a). The trial court erred by ruling that the Review Committee constituted a public body subject to the OMA which led to its erroneous invalidation of the Review Committee's actions under MCL 15.270. The trial court also erred by denying the intervenors' motions for reconsideration which described how the trial court erred as a matter of law by ruling that the Review Committee constituted a public body subject to the OMA. The trial court's erroneous OMA ruling led to its erroneous ruling respecting the motions for reconsideration. When the trial court denied the motions for reconsideration and lifted the stay on its April 2020 Opinion and Order, the court's order took effect and invalidated the licenses that the City had issued to the 15 intervening defendants. In so doing, the trial court erred as a matter of law. Consequently, we reverse the trial court's grant of summary disposition to plaintiffs and vacate its April 2020 Opinion and Order, reverse the court's decision on the motions for reconsideration, and therefore vacate the court's invalidation of the City Council's initial licensing decisions.

Because of our decision in this regard, it is unnecessary for us to consider the City and intervenors' arguments that the Review Committee's reenactment of its decision at a meeting open to the public cured any OMA violation. Because the Review Committee was not a public body subject to the OMA, it did not violate the OMA, and had no obligation to cure a purported violation. Further, because of our decision, we need not consider defendants' arguments that the trial court should have denied the requested relief on various other grounds. Similarly, we need not address Happy Trails's and Kapp Walled Lake's claims that the trial court erred by ruling that they were not entitled to an award of actual attorney fees for an OMA violation. There being no OMA violation, Happy Trails and Kapp Walled Lake lack entitlement to such. We decline to address Aubrey Ventures's argument that the trial court should have determined that the City was estopped from issuing any licenses without rescoring the factors provided under Marijuana

---

[4] Five members of the City Council voted for the top 15 rated applicants forwarded from the Review Committee. One council member voted for the applicants ranked 24-38. One council member declined to vote at all.

-23-

Ordinance, § 19.5-13(4)(b), because the City had no obligation to do so since the Review Committee had not violated the OMA.

We also need not consider the issues raised pertaining to the trial court's ruling on plaintiffs' motion to enforce the judgment that invalidated the licenses that the City had issued to the 15 intervening defendants. Having determined that the trial court erred as described herein, which requires reversal of the grant of summary disposition to plaintiffs and reversal of its order denying reconsideration, the vacation of the trial court's 2020 Opinion and Order requires reinstatement of the City's initial licensing determinations. The appellate relief granted regarding the OMA claims renders the trial court's 2020 Opinion and Order and later October 26, 2021 order both void and unenforceable. Accordingly, because the trial court's order enforcing its judgment rested on erroneous decisions, we reverse and vacate that order as well but need not address the substantive arguments made by appellants.

## 2. DUE PROCESS

Some intervening defendants argue that the trial court's decision to invalidate the licenses that were awarded to them deprived them of procedural due process because they did not have an adequate opportunity to defend their interests. Although the intervenors had a property interest in their licenses, the record establishes that the trial court took adequate steps to protect their rights. The trial court rendered erroneous decisions but afforded the intervenors the requisite due process.

Both the United States Constitution and the Michigan Constitution prohibit the government from depriving persons of life, liberty, or property without due process of law. See US Const, Am XIV; Const 1963, art 1, § 17. The protections afforded by these clauses include both a substantive provision, which protects persons from arbitrary acts by the government, and a procedural component, which guarantees constitutionally sufficient procedures for the protection of life, liberty, and property. See *Bonner v City of Brighton*, 495 Mich 209, 223-224; 848 NW2d 380 (2014), see also *Cary Investments, LLC v City of Mount Pleasant*, ___ Mich App ___, ___; ___ NW2d ___ (2022), slip op at 4-5.

Procedural due process requires—at a minimum—that a person whose interests might be affected by government action be given notice and a meaningful opportunity to be heard before the government acts. *Bonner*, 495 Mich at 235. Additionally requirements may be necessary depending on three considerations: the private interest that will be affected, the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards. *Id*.

It is true that the trial court ultimately heard Happy Trails's motion for summary disposition and issued its April 2020 Opinion and Order before any intervenors had been permitted to intervene. However, the City moved to add the entities who received licenses as necessary parties under MCR 2.205(A), before the court considered Happy Trails's motion for summary disposition, and the court expressed its concern that the license holders be given an opportunity to participate in the litigation. The trial court proceeded to decide the motion and issue its April 2020 Opinion and Order, but it also stayed the application of that order on the same day the court's clerk entered the order. The court did so because it intended to grant the motions to intervene by the license holders to give them an opportunity to file motions for reconsideration challenging the propriety

-24-

of the trial court's application of the law to the undisputed facts, which it specifically allowed. The trial court then provided the intervenors the opportunity to join the litigation, file their motions for reconsideration, and otherwise participate in the proceedings. After considering all the motions for reconsideration and conducting a hearing, the trial court concluded that it correctly applied the law to the facts and determined that Happy Trails had demonstrated its entitlement to relief. Accordingly, in September 2020, it lifted the stay on its April 2020 Opinion and Order, and denied the motions for reconsideration.

The trial court did not act arbitrarily when it granted Happy Trails's motion, it merely erred in its application of the law to the fact. Further, the trial court recognized that due process required that the license holders be brought into the litigation so that they could advocate for their interests. For that reason, it stayed its own order to give the intervenors time and opportunity to identify errors in the trial court's application of the law that might warrant revisiting the court's decision. Moreover, by joining them to the consolidated lawsuits, the trial court protected the intervenors' right to seek appellate review of the trial court's decisions. The trial court also held a lengthy hearing at which it gave the intervenors the opportunity to address issues that had not been identified by the City, and it addressed those issues before determining to uphold its earlier decision. The trial court's efforts to protect the rights of the license holders met the requirements of procedural due process. See *Bonner*, 495 Mich at 235-240.

As explained previously, however, the trial court abused its discretion when it premised its decision on a misunderstanding of controlling legal principles. *Davis*, 296 Mich App at 612-613. And for that reason, the trial court's 2020 Opinion and Order and order denying reconsideration are reversed.

## III. PLAINTIFFS' APPEALS INVOLVING THE DUE-PROCESS CLAIMS

### A. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg*, 285 Mich App at 369. We also review de novo the proper application of constitutional law, and the proper interpretation of the relevant ordinance. See *Bonner*, 495 Mich at 221.

### B. ANALYSIS

The trial court granted the City's motion for summary disposition of the due-process claims under MCR 2.116(C)(8). The trial court essentially determined that the claims all involved application of the Marijuana Ordinance and, because plaintiffs could not establish that they had a property interest in the outcome of the application of the Marijuana Ordinance, the claims failed as a matter of law.

#### 1. MOOTNESS

As a preliminary matter, several plaintiffs argue that the trial court should not have considered the City's motion to dismiss the due-process claims because it no longer needed to do so given its decision on Happy Trails's motion for partial summary disposition of the OMA claims. More specifically, they argue that the trial court's decision on Happy Trails's motion rendered any decision on the due-process claims moot.

-25-

Michigan courts generally do not decide moot questions or declare legal principles that can have no legal effect in the case. See *Barrow v Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014). A decision is moot when an event has occurred that makes it impossible for the court to grant any relief on the claim, or when judgment cannot have any practical legal effect on the existing controversy. *Id.*

The trial court's decision on the claims involving the OMA did not render the claims for the violation of due process moot. Plaintiffs' claims under the OMA, not surprisingly, involved whether the OMA applied to the Review Committee and whether any violation of the OMA warranted relief of some kind. Plaintiffs sought a declaration that the OMA applied to the Review Committee and asked the trial court to both invalidate the decisions that the Review Committee made without doing so at meetings open to the public and for the trial court to order the Review Committee to comply with the OMA.

Although the OMA claims indirectly involved the proper scope and application of the Marijuana Ordinance for determining whether the Review Committee was a public body, the OMA claims did not involve claims on which the trial court could have granted relief directly related to the proper application of the Marijuana Ordinance. By contrast, the due-process claims focused on the procedures for licensing medical marijuana facilities under the Marijuana Ordinance. Plaintiffs alleged that they had rights related to the proper application of the Marijuana Ordinance and suffered damages as a result of the City's failure to follow those procedures. They asked the trial court, in part, to order the Review Committee and the City Council to follow the procedures stated in the Marijuana Ordinance. The relief available in the OMA action was limited to injunctive relief regarding OMA, see MCL 15.271, and the invalidation of decisions wrongfully made in violation of the OMA, see MCL 15.270. It did not generally include the authority to order injunctive relief arising from a due-process right to a particular procedure or result under the Marijuana Ordinance. Additionally, a due-process violation of the Marijuana Ordinance—unlike an OMA violation—might support a claim for monetary damages. See *Bauserman v Unemployment Ins Agency*, 330 Mich App 545, 460-465; 950 NW2d 446 (2019). Accordingly, the trial court's decision on the OMA claims did not render any decision on plaintiffs' due-process claims moot. See *Barrow*, 305 Mich App at 659.

## 2. DUE-PROCESS CLAIMS

The trial court granted the City's motion to dismiss plaintiffs' due-process claims under MCR 2.116(C)(8). A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of a claim on the pleadings alone. *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). In reviewing such a motion, the court must accept as true all factual allegations stated in the complaint. *Id.* The trial court should grant a motion under MCR 2.116(C)(8) if, even accepting all the allegations as true, the plaintiff has failed to state a claim upon which relief can be granted. *Id.*

Plaintiffs various alleged claims involving the violation of the rights afforded by substantive and procedural due process. The touchstone of due process involves the protection of the individual against arbitrary government action. *Bonner*, 495 Mich at 224; *Cary Investments*, ___ Mich App at ___; slip op at 4-5. Due process includes both a substantive component and a procedural component; the "substantive component protects against the arbitrary exercise of governmental power, whereas the procedural component is fittingly aimed at ensuring

-26-

constitutionally sufficient procedures for the protection of life, liberty, and property interests." *Bonner*, 495 Mich at 224; see also *Cary Investments*, ___ Mich App at ___; slip op at 4-5. The initial inquiry for both components is to identify the interest allegedly infringed to determine whether it falls within the definition of life, liberty, or property. If the interest at issue does not involve a life, liberty, or property interest, then the Due Process Clause affords no protection and the claim must fail. *Bonner*, 495 Mich at 224; *Cary Investments*, ___ Mich App at ___; slip op at 4-5.

Plaintiffs' due-process claims, though alleged in varying terms, each involved claims that the City violated their right to have the facility licenses issued consistent with the requirements of the Marijuana Ordinance. Stated another way, each of their claims involved whether the City failed to follow its own laws in the issuing of the licenses and violated the due-process protections afforded to applicants for a license. The question, therefore, is whether an applicant's application for a license involves a life, liberty, or property interest for which the Due Process Clause provides protection.

In general terms, a license does not convey property rights under Michigan law. See *Morse v Liquor Control Comm*, 319 Mich 52, 66; 29 NW2d 316 (1947). Our Supreme Court, however, has recognized that once the government issues a license, the holder of a license has a sufficient property interest in the license to invoke the protections of the Due Process Clause. See *Bundo v Walled Lake*, 395 Mich 679, 688-696; 238 NW2d 154 (1976). The Court explained that, although the license holder holds the license by the grace of the government, once issued, the license holder can reasonably assume that the government will renew the license when the renewal procedure provides for renewal as a matter of course. *Id*. at 692, 693, 695. The same is not true for a first-time applicant for a license. This Court has explained that first-time applicants for licenses are not entitled to minimal due process. *Cary Investments*, ___ Mich App at ___ (citation omitted); slip op at 5. This is because a property right must be premised on more than a "mere unilateral expectation." *Bundo*, 395 Mich at 692. A person must have more than an " 'abstract need or desire' " for a benefit in order to have a property interest in it; he or she must have a " 'legitimate claim of entitlement' " to the benefit. *Id*., quoting *Bd of Regents of State Colleges v Roth*, 408 US 564, 577; 92 S Ct 2701; 33 L Ed 2d 548 (1972). Because a first-time applicant for a license cannot show that he or she has an entitlement to the license, a first-time applicant has no property interest in the issuance of the license. See *Maxwell v Dep't of Environmental Quality*, 264 Mich App 567, 572; 692 NW2d 68 (2004); see also *Wong v City of Riverview*, 126 Mich App 589, 592-593; 337 NW2d 589 (1983); *Barr v Pontiac City Comm*, 90 Mich App 446, 451; 282 NW2d 348 (1979) ("We agree with defendant's contention that there is no protected interest in a mere expectation a new license applicant or transferee might possess.").[5] For that reason, the procedural protections of the Due Process Clause do not apply to the determination whether to issue a license in the first

---

[5] The parties try to distinguish the liquor license cases to no avail. The general principle from these decisions is that one has no property interest in a license until it has been formally granted to the licensee. An applicant, therefore, cannot complain that the application procedure did not meet minimum due process because he or she has no interest in the license during the initial application process. See *Maxwell*, 264 Mich App at 572; *Wong*, 126 Mich App at 592-593. That is analogous to the events at issue.

instance. This Court's review of a city's decisions regarding first-time applicants is "extremely narrow[,]" . . . "limited only to whether the city has acted arbitrarily and capriciously." *Cary Investments*, ___ Mich App at ___ (citation omitted); slip op at 5.

In this case, because plaintiffs were first-time applicants for a facilities license, they had no property interest in a license that required the City to provide them procedural due process. *Id*. For that reason, plaintiffs' procedural due-process claims premised on the failure to follow the Marijuana Ordinance or the OMA failed as a matter of law because the City followed the process prescribed by the Marijuana Ordinance, the Review Committee did its part, and the City Council made the ultimate decisions regarding selection of the applicants to receive licenses. As explained in *Cary Investments*, "due process merely ensures a fair procedure, not any particular outcome." *Cary Investments*, ___ Mich App at ___; slip op at 6. "The right to due process guaranteed by the United States Constitution and the Michigan Constitution of 1963 does not empower courts to micromanage the decision-making of governmental entities." *Id*. at ___; slip op at 7.

On appeal, plaintiffs assert that, notwithstanding the law involving first-time applicants for a license, they had an interest in the procedures for obtaining a license for two reasons. They first assert that when the procedures for issuing a license so circumscribe the issuing agency's authority that an applicant has a reasonable expectation of receiving the license, due process protects the applicant's right to have the issuing agency follow the procedures. See, e.g., *Med Corp, Inc v City of Lima*, 296 F3d 404 (CA 6, 2002); *Walz v Town of Smithtown*, 46 F3d 162, 168 (CA 2, 1995); *Yale Auto Parts, Inc v Johnson*, 758 F2d 54, 58-59 (CA 2, 1985) (stating that even a violation of a state's own laws does not give rise to a due-process violation; there must be a very strong likelihood that the application would be granted absent the violation).[6] These authorities recognize that a government can create a property interest in an application process by establishing a rule or policy that circumscribes the authority to deny the benefit to an applicant who meets the requirements of the law or policy. See *Med Corp*, 296 F3d at 409-411; *Walz*, 46 F3d at 168 ("We believe the discretion of the Superintendent of Highways to deny an excavation permit is so circumscribed that the Walzes possessed an entitlement to a permit."). Even if these authorities applied in Michigan, this case does not fall within those rules.

The Marijuana Ordinance includes numerous requirements for the applicant, but it does not guarantee a license to any applicant, even if the applicant submits the required materials and otherwise meets the minimum requirements for a license. Indeed, the Marijuana Ordinance allows the City Council to disapprove applications depending on the scoring of the 17 factors and its further analysis of the applications and the applicants' plans and qualifications. Marijuana Ordinance, § 19.5-14(1) and (2) (giving the City Council the final authority to approve an application and requiring the City Council to confirm compliance and rank applications under certain circumstances, but not requiring the City Council to approve applicants on the basis of rankings). The Marijuana Ordinance provided the City Council with unfettered discretion to approve or disapprove the grant of a license. In fact, the City Council had no obligation to issue any licenses, no matter how qualified the applicants. See Marijuana Ordinance, § 19.5-7(3)

---

[6] Decisions by lower federal courts are not binding on this Court, but may be persuasive. See *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

(setting the maximum number of provisioning centers and then stating that the City has no obligation to issue licenses and further providing that the City can issue them "whenever they want"). Under these circumstances, it cannot be said that the Marijuana Ordinance contained rules that so limited the discretion of the decision-makers that any applicant had a reasonable expectation that he or she would receive a license if he or she complied with the application process. Indeed, under the plain terms of the Marijuana Ordinance, no applicant can be said to have had a reasonable expectation of receiving a license no matter how qualified.

Plaintiffs also suggest that they had a protected property interest because they expended funds in complying with the application process and purchased interests in real property as part of that process. The fact that plaintiffs spent sums and acquired property in the hope that they would receive a license, however, does not establish that they were entitled to a license. See *Bundo*, 395 Mich at 692. Such expenditures do not give rise to a property interest in a license that has yet to be issued. For these reasons, the trial court did not err when it determined that plaintiffs' claims that the City violated procedural due process failed as a matter of law. No first-time applicant has an interest in the procedures for obtaining a license under the Marijuana Ordinance protected by the Due Process Clause. See *Maxwell*, 264 Mich App at 572; *Wong*, 126 Mich App at 592-593; *Barr*, 90 Mich app at 451.

Plaintiffs also variously asserted that the City violated substantive due process in the manner by which they denied the licenses at issue. The substantive component of due-process protections protects a person from the arbitrary exercise of government power. See *Bonner*, 495 Mich at 224; *Cary Investments*, ___ Mich App at ___; slip op at 4-5. The substantive protections protect a person from both arbitrary laws and the arbitrary exercise of government authority; the distinction depends on whether the plaintiff is attacking the constitutionality of a law or attacking an act by a governmental agent. See *Mettler Walloon LLC v Melrose Twp*, 281 Mich App 184, 198; 761 NW2d 293 (2008). For laws that do not affect a fundamental liberty interest, a plaintiff must demonstrate that the law is not reasonably related to a legitimate governmental interest. See *Bonner*, 495 Mich at 227. If the plaintiff is attacking a governmental action rather than a law, then the plaintiff must show that the governmental actor took action that was so arbitrary as to shock the conscience. *Mettler Walloon*, 281 Mich App at 200; *Cary Investments*, ___ Mich App at ___ (citation omitted); slip op at 4. But in both instances the plaintiff must still establish that the law or act affected an interest protected by due process. See *Bonner*, 495 Mich at 225 (stating that the first inquiry is whether the plaintiff has identified an interest that has been infringed by the law or act, which comes within the definition of life, liberty, or property). Because plaintiffs failed to identify such an interest, their due-process claims failed as a matter of law. But even if the protections of substantive due process were to apply to any and all acts or laws without regard to whether the law or act infringed an interest protected by due process, plaintiffs did not allege a claim for such a violation.

In this case, plaintiffs did not raise a claim that the Marijuana Ordinance was not reasonably related to a legitimate government interest—that is, they do not challenge the constitutionality of the ordinance. Rather, they alleged that the Review Committee's handling of the applications was so arbitrary that it shocked the conscience. Plaintiffs assert that the Review Committee and City Council did not follow the Marijuana Ordinance and that the individual members of the Review Committee had no legitimate reasons for scoring the factors beyond applying their own personal

preferences. Those allegations, however, were not sufficient to state a violation of substantive due process.

As this Court has noted, substantive due process does not protect persons from every governmental action that infringes liberty or damages property. Rather, the plaintiff must allege facts that—if true—would show that the actor used governmental power to oppress or acted so irrationally that its conduct lacked any legitimate state interest; the key consideration is that the conduct shocks the conscience. See *Mettler Walloon*, 281 Mich App at 202. Picking winners and losers, although it might seem unfair, does not amount to irrational conduct or oppression; and does not shock the conscience. *Id*. Even a violation of state law by the governmental actor will not, absent more, cause the act to meet the shocks-the-conscience standard. *Id*. at 202-203.

Plaintiffs did not allege any acts that were so irrational or so egregious that it could satisfy a shocks-the-conscience standard. They merely alleged that the Review Committee and City Council did not properly follow the law and acted, in their view, arbitrarily when it selected the 15 entities that received licenses. Some argue that the individual members of the Review Committee changed scores to alter which entities would receive a license. A decision to award licenses to a group of preferred entities over a group of entities that were not preferred, even if done selfishly and with complete disregard for the law, does not ordinarily rise to the level of shocking the conscience. *Id*.

Plaintiffs also argue that the trial court's decision to grant summary disposition and dismiss their due-process claims was premature. They maintain that the trial court should have granted them the opportunity to amend their complaints to allege the facts necessary to support a claim premised on substantive due process, and they maintain that the order dismissing their claims was premature because discovery had not been completed.

The trial court had an obligation to give plaintiffs an opportunity to amend their complaints to better state their due-process claims. See MCL 2.116(I)(5). However, the trial court had no obligation to do so if the evidence then before the court showed that amendment would not be justified. *Id*. The trial court stated that, given the absolute discretion provided under the Marijuana Ordinance, no one had the right to expect anything under the ordinance, such that no change in the allegations could establish a due-process violation. The trial court correctly identified the flaw in plaintiffs' claims. Therefore, the trial court did not have to afford plaintiffs an opportunity to amend their complaints before it could grant the City's motion and dismiss the due-process claims under MCR 2.116(C)(8). Moreover, although a motion under MCR 2.116(C)(10) might be premature if done before the close of discovery, *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009), a motion under MCR 2.116(C)(8) accepts the facts alleged in the complaint as true. Indeed, a motion under MCR 2.116(C)(8) cannot be opposed or supported with affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(2). Accordingly, whether the parties completed discovery lacked relevance to the court's decision regarding if plaintiffs alleged a claim on which relief could be granted. The trial court, therefore, did not err when it dismissed plaintiffs' due-process claims under MCR 2.116(C)(8).

CONCLUSION

For the reasons discussed in this opinion, in Docket Nos. 355989, 355994, 355995, 356005, 356011, 356017, 356023, we reverse the trial court's grant of summary disposition to plaintiffs on their OMA claims and reverse and vacate the trial court's April 2020 Opinion and Order and its order denying reconsideration of that order. In Docket Nos. 359269 and 359285, we vacate the order dated October 26, 2021. We remand this case for further proceedings consistent with this opinion. We do not retain jurisdiction. We further exercise our discretion under MCR 7.219(A), and order that none of the parties may tax their costs.

/s/ James Robert Redford
/s/ David H. Sawyer